**AMERICAN POSTAL WORKERS UNION, AFL–CIO, New London Connecticut Area Local, Connecticut State Postal Workers Union, APWU, AFL–CIO, and Philip N. Danko, Plaintiffs-Appellees,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellant.**

No. 963, Docket 84–6329.

United States Court of Appeals, Second Circuit.

Argued April 9, 1985.

Decided July 3, 1985.

Robert A. Cantore, New York City (Robert B. Stulberg, Vladeck, Waldman, Elias &

Engelhard, P.C., New York City, of counsel), for plaintiffs-appellees.

Harold Krent, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Alan H. Nevas, U.S. Atty., New Haven, Conn., Mark H. Gallant, Sr. Appellate Counsel, Civ. Div., Dept. of Justice, Washington, D.C., Louis A. Cox, Gen. Counsel, Steven E. Alpern, Associate Gen. Counsel, Howard J. Kaufman, Sr. Atty. U.S. Postal Service, Washington, D.C., of counsel), for defendant-appellant.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

PIERCE, Circuit Judge.

The United States Postal Service (Postal Service) appeals from an order of the United States District Court for the District of Connecticut (M. Joseph Blumenfeld, Judge), dated October 18, 1984, preliminarily enjoining the Postal Service from discharging appellee Philip N. Danko while he and his union challenge the discharge through the grievance and arbitration procedures of a collective bargaining agreement. The Postal Service alleges that the district court lacked jurisdiction to issue the preliminary injunction, and also that, even if it had jurisdiction, it abused its discretion in exercising it. In particular, the Postal Service contends that the injunction was improperly issued because it was not in aid of arbitration, and also because appellees have failed to demonstrate the existence of irreparable harm. Appellees contend that the district court did have jurisdiction to issue the preliminary injunction, that the preliminary injunction was in aid of arbitration, and also that the discharge in question would have a chilling effect on their first amendment rights, thereby providing the requisite irreparable injury for injunctive relief.

We hold that the district court did have jurisdiction to issue the preliminary injunction. We conclude, however, that the injunction herein was not in aid of arbitration, and also that the discharge in question, pending resolution of the grievance

and arbitration process, does not create a chilling effect on appellees' first amendment rights. We therefore hold that appellees have failed to demonstrate the existence of conditions which are necessary for the issuance of a preliminary injunction in an employment dispute subject to arbitration.

## BACKGROUND

In the Spring of 1984, the United States Postal Service decided to "excess," i.e. eliminate, fourteen employees at the New London Post Office and transfer a number of those employees to other offices in Connecticut. The New London Connecticut Area Local (Local) of the American Postal Workers Union, AFL–CIO (APWU), claimed that the excessing violated the collective bargaining agreement between the Postal Service and APWU and also that it resulted in delays in the mail. The Local publicized this claim in three ways: 1) by writing to elected officials; 2) by contacting local newspapers; and 3) by sending a letter, dated May 27, 1984, and signed by Danko, as president of the union, to Mystic Color Lab (Mystic), a mail order film processing company and one of the largest customers of the New London Post Office. The letter informed Mystic that, as a result of the elimination of the fourteen positions, its mail was being delayed.

The letter to Mystic stated in pertinent part:

> The purpose of this letter is to make you aware of the fact that large amounts of your film mailers are not being processed for outgoing dispatch or incoming delivery. This situation has been going on for some time now. Postal management will not make you aware of this, in fact, they would most likely deny it if questioned about it.

Danko purported to "see first hand the amount of [Mystic's] mail that is delayed, on a nightly basis," and then went on to suggest that the delays were connected with the excessing of positions at the New London Post Office.

Following an investigation by a postal inspector, the Postal Service concluded that the letter to Mystic, although not the press interviews or the letters to elected officials, constituted "conduct prejudicial to the interest of the Postal Service," in violation of sections 661.12 and 661.3 of the Ethical Code of the Employee Labor Relations Manual, which subjects employees to disciplinary action, including discharge, for actions which adversely affect the public confidence in the integrity of the Postal Service.

On June 25, 1984, the Postal Service served Danko with a 30-day advance notice of proposed removal. The notice informed Danko that he had "recklessly and knowingly" conveyed "untrue" and "inaccurate" information "to a major customer with the intent of generating hostility towards [his] employer and damaging the image of an efficient Postal Service.". Although the Postal Service contends that the correspondence with the press and elected officials also contained false accusations, the proposed removal was based exclusively on Danko's letter to Mystic. The notice further informed Danko that he could contest the proposed dismissal under the grievance and arbitration procedure set forth in the collective bargaining agreement.

Danko responded in person to the charges on July 2, 1984, contending, *inter alia,* that he had the right to send the letter in question to Mystic because of his status as president of the local union. The Postal Service rejected all of Danko's alleged defenses. In particular, the Postal Service stated that "[t]he fact that [Danko is] a union officer does not cloak [him] with blanket immunity against appropriate action against impermissible misconduct."

On July 9, 1984, a notice of removal was issued informing Danko that the charges had been sustained and that he would be removed from service effective July 26, 1984. The notice further stated that, as a "preference eligible" employee, i.e., a veteran, Danko had the option of challenging the removal either through the grievance and arbitration process or by appeal to the

Merit Systems Protection Board (MSPB). *See* 39 U.S.C. § 1005(a)(2); 5 U.S.C. § 2108. The notice of removal indicated that Danko's status during the pendency of any appeal from the discharge would be that of an employee "on the rolls, but in a nonpay, nonduty status," as specified in article 16.5 of the collective bargaining agreement. Article 16.5 states in pertinent part that, following a 30-day notice period, an employee discharged for cause "shall remain on the rolls (non-pay status) until disposition of the case." Article 16.1 confirms that an employee may be discharged for "just cause," and that an employee who succeeds in overturning a discharge is eligible for "reinstatement and restitution, including back pay."

In anticipation of Danko's forthcoming discharge, the Local pursued three courses of action. On June 29, 1984, it filed an unfair labor practice charge, which Danko signed, with the National Labor Relations Board; on July 3, 1984, the union filed a grievance on Danko's behalf in accordance with the terms of the collective bargaining agreement; and, on July 23, 1984, after the matter had proceeded through two of the four steps of the grievance and arbitration process, appellees filed the complaint in the instant action seeking declaratory and injunctive relief. Appellees claimed that Danko's proposed dismissal for engaging in union-related activities was without just cause, and that his being placed on nonpay status pending arbitration would cause him and his family irreparable harm. Appellees also alleged that Danko's threatened discharge for contacting Mystic would have a "chilling effect upon the activism of postal workers throughout the State of Connecticut." The Postal Service moved to dismiss the action for lack of jurisdiction and failure to state a claim upon which relief could be granted pursuant to Fed.R. Civ.P. 12(b)(6). On July 24, 1984, appellees moved, by order to show cause, for a preliminary injunction staying Danko's discharge pending the outcome of the grievance and arbitration procedure.

The district court, by order dated August 14, 1984, granted appellees' motion for a preliminary injunction and denied the Postal Service's motion to dismiss the action for lack of jurisdiction and failure to state a claim upon which relief could be granted. 595 F.Supp. 403. While acknowledging that the "collective bargaining agreement requires arbitration of this dispute," the district court held that it was not preempted from awarding injunctive relief during the pendency of the arbitration process. Rather, the district court held that it had jurisdiction to issue a preliminary injunction on the grounds that the injunction was being sought in aid of arbitration.

On the merits, the district court found that the potentially chilling effect on the first amendment rights of appellees constituted irreparable harm, sufficient to justify injunctive relief. In addition, the district court found that appellees had demonstrated a likelihood of success on the merits and also that the balance of equities was in their favor.

In issuing the injunction, the district court stated that "the Postal Service does not contend that Danko's continued presence in the New London office will result in the disruption of the office or the destruction of working relationships." Disagreeing with this, and again challenging the district court's jurisdiction to issue the injunction, appellant moved for reconsideration. The motion was accompanied by the declaration of F. Boughan, District Director of Employee and Labor Relations. Boughan stated that not following the rule agreed to in the collective bargaining agreement to place employees discharged for just cause in nonpay and nonduty status would be "disruptive to Postal operations" and would serve as "a constant reminder to the remaining employees that management does not have the authority to discipline its employees with court approval."

The district court denied appellant's motion for reconsideration. In doing so, the court stated: "The merits [of the dispute] are for the arbitrator, in the first instance, to decide. I have concluded only that plain-

tiffs' claims of irreparable injury are sufficiently strong to require an injunction pending a merits decision."

On appeal, the Postal Service reasserts its claims that the district court lacked jurisdiction to issue the preliminary injunction, that the injunction was not in aid of arbitration, and also that appellees have failed to satisfy the traditional prerequisites for the issuance of injunctive relief, in particular that appellees have failed to demonstrate the existence of irreparable harm.

### DISCUSSION

#### Jurisdiction

The Postal Service contends that the issuance of an injunction was contrary to "established principles of labor law" and that the district court was "preempted" from issuing the injunction. Brief for the United States Postal Service at 17. According to appellees, this argument by the Postal Service constitutes a challenge to the jurisdiction of the district court. Brief for Plaintiffs-Appellees at 9.

■ Section 1208(b) of the Postal Reorganization Act gives district courts having personal jurisdiction over the parties subject matter jurisdiction over

[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees. . . .

39 U.S.C. § 1208(b). We therefore hold that the district court had jurisdiction over the instant case.

■ Moreover, there is no statutory bar to the issuance of an injunction herein since this case is not governed by the Norris-LaGuardia Act, 29 U.S.C. § 104. The Norris-LaGuardia Act specifically states that "[n]o court ... shall have jurisdiction" to issue certain types of injunctions "involving or growing out of any labor dispute." *Id.* However, even where the injunction ordered is subject to the Norris-LaGuardia Act, the Supreme Court has approved the exercise of jurisdiction where necessary to preserve the arbitration process. *See Boys*

*Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970). Given that the Supreme Court has allowed courts to consider the propriety of issuing an injunction in cases subject to the Norris-LaGuardia Act, where the exercise of jurisdiction *is* specifically prohibited by statute, *id.*, we hold that the district court in this case, where there is *no* statutory prohibition, had jurisdiction to determine whether an injunction was warranted herein.

■ Finally, with regard to jurisdiction, neither the pendency of Danko's unfair labor practice charge before the NLRB (upon which the Board has indicated it will not act until the arbitrator renders a decision), nor the statutory review procedures for challenges to adverse employment action established under the Civil Service Reform Act, 5 U.S.C. § 7701 *et seq.*, deprived the district court of jurisdiction. With regard to the NLRB action, appellees have not litigated the unfair labor practice claim before the district court. In addition, applying the body of law developed under 29 U.S.C. § 185, the analogue to 39 U.S.C. § 1208(b), *see National Association of Letter Carriers, AFL–CIO v. Sombrotto*, 449 F.2d 915, 918–19 (2d Cir.1971), the district court and NLRB have concurrent jurisdiction over suits to enforce labor contracts, even if the conduct involved might entail an unfair labor practice. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561–63, 96 S.Ct. 1048, 1054–55, 47 L.Ed.2d 231 (1976). With regard to the statutory review procedures, as a "preference eligible" employee, Danko had the option of challenging his discharge through either the contractual arbitration process or the Civil Service's review procedures. His choice of the contractual alternative barred his invocation of the statutory procedures. 5 U.S.C. § 7121(e)(1).

#### Propriety of the Injunction

Having determined that the district court had jurisdiction to issue preliminary injunctive relief, we conclude that the district

court nevertheless abused its discretion in awarding an injunction under the facts and circumstances of this case. *Brown v. Chote*, 411 U.S. 452, 457, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973).

■ To obtain a preliminary injunction, a party must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

■ With regard to the existence of irreparable harm, in *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), the Supreme Court articulated a particularly stringent standard for irreparable injury in government personnel cases. Therein, a probationary government employee sought an injunction against her discharge pending administrative review, alleging that the deprivation of income for an indefinite period of time constituted irreparable injury. According to the *Sampson* Court, except in a "genuinely extraordinary situation," irreparable harm is not shown in employee discharge cases simply by a showing of financial distress or difficulties in obtaining other employment. *Id.* at 92 n. 68, 94 S.Ct. at 953 n. 68. We therefore agree with the district court that Danko's financial difficulties resulting from his discharge are not sufficient to establish irreparable injury.

Appellees contend and the district court found, however, that Danko's discharge pending arbitration would have a chilling effect on the exercise of their first amendment rights and that such a chilling effect constitutes irreparable injury. Appellant admits that the chilling of first amendment rights would constitute irreparable injury. *Katz v. McAulay*, 438 F.2d 1058, 1060, n. 3 (2d Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). Appellant argues, however, that appellees have failed to demonstrate that Danko's discharge, pending arbitration, would in fact have a

chilling effect on appellees' first amendment rights.

We conceive the question facing us concerning the existence of irreparable harm in the instant case as being twofold: whether appellees' first amendment rights are implicated by Danko's letter to Mystic; and, if so, whether Danko's discharge pending arbitration sufficiently chills the exercise of those rights to justify preliminary injunctive relief. As to whether the letter to Mystic implicates appellees' first amendment rights, in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court, citing *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), held that although a government employee does not relinquish first amendments rights merely upon assumption of such employment, in order for a public employee's speech to be protected by the first amendment, it must involve a matter of public interest or concern. *Connick*, 461 U.S. at 142–47, 103 S.Ct. at 1687–90; *see Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 414, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). In deciding whether an issue is one of public concern, the *Connick* Court stated that such a determination should be based on "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690.

Herein, Danko's letter to Mystic seems to have been, at least in part, about a matter of public concern. Although the letter referred to excessing as the cause of delays in the mail, the purpose of the letter, as stated in its opening sentence, was to inform Mystic of the delay. Given the Postal Reorganization Act's reference to the need of the public to receive "prompt, reliable and efficient service," 39 U.S.C. § 101, the press coverage of the postal delays, and the letters sent by Danko to his government representatives, it seems reasonable for the district court to have con-

cluded that the letter to Mystic was, at least in part, about a matter of public concern.

■ We hold, however, that even if appellees' first amendment rights are implicated herein by Danko's letter to Mystic, appellees have not demonstrated that Danko's discharge, pending the outcome of the grievance and arbitration process, would have a chilling effect on appellees' exercise of their first amendment rights, sufficient to constitute irreparable harm. As the Supreme Court stated in *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), a party must articulate a "specific present objective harm or a threat of specific future harm" to establish a cognizable claim based on the chilling of first amendment rights. *Id.* at 13–14, 92 S.Ct. at 2325–26; *See, California Bankers Ass'n v. Shultz*, 416 U.S. 21, 56–57, 94 S.Ct. 1494, 1515, 39 L.Ed.2d 812 (1974).

In our view, appellees herein have failed to allege a clearcut infringement of first amendment rights which, absent preliminary injunctive relief, either has occurred or will occur in the future. Rather, appellees merely make the conclusory assertion that Danko's discharge has "chilled the will of the postal workers in Connecticut, and their elected officials." More importantly, as appellant argues, we fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

Moreover, appellees incorrectly rely on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) to support their position. In *Elrod*, at the time a preliminary injunction was sought in the district court, employees of the Sheriff's Office of Cook County, Illinois, were being threatened with immediate discharge for refusing to change their political affiliations. The *Elrod* Court noted that "[i]t [was] clear ...' that First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.* at 373, 96 S.Ct. at 2689. Herein, to the contrary, we do not find that appellees' first amendment right to speak truthfully about matters of public concern was threatened by Danko's discharge, pending arbitration, for making allegedly false statements to a customer. For the foregoing reasons, we hold that appellees have failed to demonstrate sufficient injury to justify a finding of irreparable harm.

■ Furthermore, since this case involves the issuance of a preliminary injunction restraining an employer from conduct subject to arbitration, in addition to the traditional requirements for a preliminary injunction, appellees must also show that the injunction was necessary to preserve the jurisdiction of the arbitrator or as an aid to arbitration. *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R. Co.*, 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960) (injunction may issue to restrain employer from conduct subject to arbitration in order to "preserve [the arbitrator's] jurisdiction by preventing injury so irreparable that a decision of the [arbitrator] in the unions' favor would be but an empty victory.") For example, in *Lever Brothers Company v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir.1976), the arbitrable issue was whether the company had the right to relocate its plant. Pending the outcome of the arbitration, the court enjoined the company from making the move. Had the injunction not been issued, the company would have relocated and the employees "*would have been totally and permanently deprived of their employment.*" *Id.* at 122 (emphasis in original). According to the court, this would have rendered the arbitrator's award to the union "but an empty victory." *Id.* (quoting *Brotherhood of Locomotive Engineers*, 363 U.S. at 535, 80 S.Ct. at 1330); *see Local Lodge No. 1266, IAMAW v. Panoramic Corp.*, 668 F.2d 276, 279–83 (7th Cir.1981) (injunction required to avoid "depriv[ing] the union of an effective remedy in the

event the arbitrator decided the grievance in the union's favor" (citing *Lever Brothers Company* )); *Columbia Local, APWU v. Bolger,* 621 F.2d 615, 617–18 (4th Cir.1980) (injunction may issue where "the arbitrator could not ... satisfactorily return the parties to the *status quo ante* if this were required by the arbitration result") (emphasis in original).

■ Applying these principles herein, we can find no basis to conclude that an injunction is required in order to aid the arbitral process. The dispute is currently the subject of arbitration, and if Danko's discharge is ultimately deemed to have been without cause, he can be reinstated with full pay, thereby returning him to his former status with no difficulty. Moreover, to require the Postal Service to keep Danko on the job during the interim period would frustrate that provision of the collective bargaining agreement that specifically authorizes placing an employee on nonpay status pending the outcome of a grievance and arbitration proceeding.

■ Given the absence of irreparable harm, which constitutes an absolute requirement for an award of injunctive relief, *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir.1976), and given that, in our view, the injunction was not an aid to arbitration, we find it unnecessary to consider appellees' arguments concerning the other prerequisites for the issuance of preliminary injunctive relief.

For the foregoing reasons, we reverse the decision of the district court.