Vincent F. COSTELLO, Plaintiff,

v.

Thomas A. McENERY, in his official and individual capacities; Lucius J. Riccio, in his official capacity as Commissioner of the Department of Transportation of the City of New York; The Parking Violations Bureau of the City of New York; The Department of Transportation of the City of New York; and the City of New York, Defendants.

No. 91 Civ. 3475 (PKL).

United States District Court, S.D. New York.

July 16, 1991.

Nicholas J. Pappas, New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel for City of New York, New York City (Rebecca Northey, of counsel), for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action brought pursuant to 42 U.S.C. § 1983 asserting, in essence, that plaintiff was transferred from one job to another in retaliation for public and private comments plaintiff made regarding purportedly unethical and illegal practices at the New York City Parking Violations Bureau. Plaintiff claims that his rights under the first amendment of the United States Constitution have thereby been violated. Plaintiff has now moved for a preliminary injunction, seeking the following interim relief: [1]

1) reinstatement of plaintiff to his former position as Director of Operations at the Parking Violations Bureau;

2) discontinuance of adverse personnel actions against plaintiff, including refusing or failing to assign plaintiff job duties commensurate with his seniority and managerial rank;

3) continued payment to plaintiff of his present salary, and maintenance of plaintiff's present managerial rank; and

4) a bar on defendants' reporting adverse personnel actions to any potential future employer of plaintiff.

For the reasons set forth below, plaintiff's motion for a preliminary injunction is denied.[2]

---

1. Plaintiff did not seek a temporary restraining order before moving for a preliminary injunction.

2. This Order and Opinion shall constitute the Court's findings of facts and conclusions of law, as required by Fed.R.Civ.P. 52(a) and 65(d). These findings are based solely on the evidence now before the Court, and are only controlling with respect to decision of the instant motion.

## Background

Plaintiff Vincent F. Costello was employed by the City of New York as Director of the Operations Division of the Parking Violations Bureau ("PVB"), beginning in June 1980. The function of the Operations Division of the PVB is to process parking violation summonses, including, *inter alia,* the resolution of public inquiries and complaints, the correction of electronic and manual files, and the processing of refund claims. Plaintiff was responsible for management of the Operations Division.

Defendant Thomas A. McEnery ("McEnery") was at all relevant times Deputy Commissioner of the New York City Department of Transportation ("DOT"), and Director of the PVB, a bureau of DOT. Defendant Lucius J. Riccio was at all relevant time Commissioner of DOT. The remaining defendants are the PVB, DOT, and the City of New York.

In early 1988, plaintiff began voicing numerous criticisms of what he claimed to be unethical or illegal PVB policies and operating methods. Specifically, plaintiff objected to: the reprogramming of the PVB computer in such a manner as to cause the computer inaccurately to record parking violations; PVB's failure to make a warranty claim with respect to the inadequate performance of a computer PVB had purchased; PVB's failure to notify citizens of overpayments of fines and interest, and to refund such overpayments; certain improper practices involving city marshals' collection of judgments; PVB's "false threats" of debt collection actions against parking violators with small outstanding judgments; PVB's instructions to administrative law judges to find persons guilty of parking violations in cases in which the PVB could not establish a prima facie case; and PVB's use of an inadequate number of private collection agencies. These criticisms were addressed to defendant McEnery, as well as to others within the PVB, from early 1988 through April 1990.

On May 14, 1990, plaintiff and McEnery attended a dinner given by the association of PVB's administrative law judges, at which plaintiff was presented with an award as "Administrator of the Year." In his acceptance speech, plaintiff restated some of his prior criticisms of PVB policies and practices. At a meeting on May 24, 1991, McEnery informed plaintiff that he was transferring plaintiff to the recently-created position of Director of Quality Control and Project Implementation, and that plaintiff would remain at the same level of seniority and salary. Plaintiff refused to accept the new position.

Defendants claim that plaintiff was transferred because he was disruptive and had difficulties cooperating with his peers and supervisors, had become rigid and isolated as Director of the Operations Division, and because McEnery believes that managers tend to become "stale" if they remain in one job for too long. McEnery also asserts that the new position had been created prior to plaintiff's May 14 speech, and that his transfer of plaintiff was in no way in retaliation for the criticisms of the PVB plaintiff made either in that speech or prior thereto.

Plaintiff, in contrast, claims that McEnery refused—and continues to refuse—to describe plaintiff's new responsibilities, or the size of his staff. He also asserts that McEnery's stated reasons for the transfer are merely pretextual, and that McEnery's true reason for removing him from the position of Director of Operations was to retaliate against plaintiff for his criticisms of the PVB. Finally, plaintiff claims that no PVB manager has been removed in the past ten years merely for the sake of change.

On May 25, 1991, McEnery asked plaintiff to reconsider his refusal to accept the new position, and informed plaintiff that he would remove plaintiff from his existing position regardless of whether plaintiff took the new position. Plaintiff did not accept the new position, and, effective June 1, 1990, he was removed from the Director of Operations position, and shortly thereafter assigned to DOT's Legal Affairs Division at the same level of pay. Plaintiff claims that his duties in the Legal Affairs Division have been generally undefined, and that to the extent he has done work it

has been of a menial nature. McEnery, however, states that the assignment to the Legal Affairs Division was meant to be temporary until another position could be located, that plaintiff has been encouraged to apply for several other managerial positions, and that plaintiff has refused to consider any of them.[3] Plaintiff disputes this, asserting that he has merely requested more information regarding the positions.

On or about May 30, 1990, plaintiff reported his transfer to New York City Council President Andrew Stein. By letter dated June 26, 1990, Mr. Stein requested that the New York City Department of Investigation ("DOI") conduct an investigation of the transfer to determine whether it violated the so-called "whistleblower" law, Local Law of the City of New York 1984, No. 10. DOI thereafter carried out a lengthy investigation of plaintiff's transfer, and, on June 11, 1991, issued a thorough report, finding that plaintiff was reassigned not because of "whistleblowing" activities, but because he could no longer work constructively with PVB management.

Plaintiff commenced this § 1983 action on May 22, 1991, nearly one year after his transfer, and shortly thereafter moved for preliminary injunctive relief. Plaintiff claims that his transfer was in fact in retaliation for his speaking out on matters of public concern, and thus defendants have violated, and continue to violate, his rights under the first amendment. In addition, plaintiff claims that by reassigning him, defendants have damaged his honor, integrity and reputation, and caused him pain and suffering. Finally, plaintiff asserts that other PVB employees have informed

him that they are now fearful of reporting any unethical or illegal conduct at PVB because they believe PVB officials will retaliate against them. Plaintiff thus seeks injunctive relief on the additional ground that the first amendment rights of those other PVB employees are also being infringed.[4] On July 11, 1991, an evidentiary hearing was held on plaintiff's motion for a preliminary injunction. That motion is now before the Court.

*Discussion*

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990); *see also Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986). "A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and 'either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.'" *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988) (quoting *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982)). Indeed, where, as here, the relief sought is in part mandatory, and not merely prohibitive, a "substantial" likelihood of success on the merits has been required. *See Securities and Exchange Commission v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir.1990); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 (2d Cir. 1985).[5]

---

**3.** The New York City Department of Personnel ("DOP"), in response to a letter from plaintiff's counsel, conducted an investigation of plaintiff's reassignment. In September 1990, DOP concluded that because plaintiff's transfer was a lateral managerial move, the reassignment could not be viewed as a disciplinary action.

**4.** In support of this final claim, plaintiff's counsel has provided a declaration purporting to summarize affidavits of eight other PVB employees—none of whom is a plaintiff in this action—who allegedly fall into this category. According to the declaration, the affiants do not want their identities revealed, for fear of retalia-

tion. However, the alleged chilling effect on persons who are neither plaintiffs in the instant case nor represented in any way by the person who is the plaintiff, has tenuous relevance at best to plaintiff's motion. Moreover, even if the facts contained in plaintiff's counsel's declaration are assumed to be true, they would not support granting the injunctive relief plaintiff seeks, for the reasons stated herein.

**5.** The requirement of irreparable harm remains the same, however, whether the relief sought is mandatory or prohibitive. *See Abdul Wali, supra*, 754 F.2d at 1026. Because plaintiff's motion should be denied on the basis of failure to

■ The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant. "An applicant for a preliminary injunction 'must show that it is *likely* to suffer irreparable harm if equitable relief is denied.' Thus, a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. National Union Fire Insurance Company of Pittsburgh,* 934 F.2d 30, 33–34 (2d Cir. 1991) (quoting *JSG Trading Corp., supra,* 917 F.2d at 79) (emphasis in original). "[I]nequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." *Buckingham Corp. v. Karp,* 762 F.2d 257, 262 (2d Cir. 1985). " 'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Corp.,* 719 F.2d 42, 45 (2d Cir.1983)); Mulligan, *Forward, Preliminary Injunction in the Second Circuit,* 43 Brooklyn L. Rev. 831, 833 (1977) (showing of irreparable harm is fundamental and traditional requirement in any action where preliminary injunctive relief is sought).

In two recent cases similar to the case at bar, the Second Circuit has reversed the district court's granting of preliminary injunctive relief. In *American Postal Workers Union v. United States Postal Service,* 766 F.2d 715 (2d Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986), a postal workers union local president had written a letter to a major customer of the New London Connecticut Post Office, stating that recent personnel cuts at the post office had resulted in serious delays in mail delivery. The Postal Service conducted an investigation and found that the president's letter constituted "conduct prejudicial to the interest of the Postal Service," and thereafter informed the president—who was also a postal employee—that he would be fired in thirty days. The president, as well as his union, then moved for a preliminary injunction barring his discharge pending the outcome of a grievance procedure. The district court granted the injunction, holding that the potentially chilling effect on the first amendment rights of the president and others in the union constituted irreparable harm sufficient to warrant injunctive relief.

On appeal, the Second Circuit reversed, finding that irreparable harm had not been shown. *American Postal Workers, supra,* 766 F.2d at 722. The Court noted first that "[w]ith regard to irreparable harm, in *Sampson v. Murray,* 415 U.S. 61, 91–92, 94 S.Ct. 937, 953–54, 39 L.Ed.2d 166 (1974), the Supreme Court articulated a particularly stringent standard for irreparable injury in government personnel cases.... According to the *Sampson* Court, except in a 'genuinely extraordinary situation,' irreparable harm is not shown in employee discharge cases simply by a showing of financial distress or difficulties in obtaining other employment." *American Postal Workers, supra,* 766 F.2d at 721 (quoting *Sampson, supra,* 415 U.S. at 92 n. 68, 94 S.Ct. at 953 n. 68).[6]

The Second Circuit then turned to the issue of the chilling of first amendment rights, noting that such chilling would constitute irreparable injury, *American Postal Workers, supra,* 766 F.2d at 721, and finding that the president's letter implicated first amendment rights because it addressed a matter of public concern. *American Postal Workers, supra,* 766 F.2d at 721–22. However, the Court held, irreparable harm had not in fact been demonstrated, stating that "appellees herein have

show irreparable harm, it is, in the final analysis, of no consequence whether the relief sought is deemed to be mandatory or prohibitive.

**6.** The *Sampson* Court also held that, in general, damage to reputation "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." *Sampson, supra,* 415 U.S. at 91–92 and n. 68, 94 S.Ct. at 953 and n. 68.

failed to allege a clearcut infringement of first amendment rights which, absent preliminary injunctive relief, either has occurred or will occur in the future." *American Postal Workers, supra,* 766 F.2d at 722. "More importantly," the Court went on to explain,

> we fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

*American Postal Workers, supra,* 766 F.2d at 722.

The Second Circuit reaffirmed this holding in *Savage v. Gorski,* 850 F.2d 64 (2d Cir.1988), where the Court reversed the district court's granting of a preliminary injunction that barred the discharge of public employees on the basis of their political beliefs. Citing and quoting *American Postal Workers* at length, the Second Circuit reiterated that

> [s]ince the source of the 'chill' is the permanent loss of appellees' jobs, retaining those positions pending resolution of the case will do nothing to abate that effect.... Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.

*Savage, supra,* 850 F.2d at 67–68; *see also Rao v. New York Health and Hospitals Corp.,* 1990 WL 201662, 1990 U.S. Dist. LEXIS 16455 (S.D.N.Y. Dec. 6, 1990) (Leval, J.), *motion for reargument denied,* 1991 WL 64455, 1991 U.S. Dist. LEXIS 4865 (S.D.N.Y. April 12, 1991) (denying preliminary injunction in retaliatory discharge case alleging infringement of first amendment rights, noting that "the Second Circuit has held that a preliminary injunction would not cure any irreparable harm.") (citing *Savage, supra,* 850 F.2d at 67–68, and *American Postal Workers, supra,* 766 F.2d at 722).

■ The logic underlying the holdings in *Savage* and *American Postal Workers* is equally applicable in the case at bar, and requires denial of plaintiff's motion for preliminary injunctive relief. First, plaintiff repeatedly admits that his speech has *not* been chilled, *see* Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction at 16; Reply Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction at 9, and the evidence of chilling of other PVB employees is unpersuasive and of little or no relevance.[7] Moreover, because the source of any "chill" on the first amendment rights of either plaintiff or other PVB employees is the permanent loss of plaintiff's job, the interim injunctive relief plaintiff seeks in his instant motion will do nothing to thaw that chill. *See Savage, supra,* 850 F.2d at 67–68; *American Postal Workers, supra,* 766 F.2d at 722; *Rao, supra,* 1991 WL 64455, 1991 U.S. Dist LEXIS 4865.[8]

■ Plaintiff attempts to distinguish the instant case from *Savage* and *American Postal Workers* by arguing that those cases involved the indirect infringement of first amendment rights, whereas in the present action plaintiff's right to freedom of speech is being directly violated. Plaintiff then asks this Court to presume irreparable harm. However, plaintiff is incorrect when he claims that the alleged restriction on his first amendment rights is a direct one. Plaintiff is—as he has conceded—free to speak on issues of concern to him. The Second Circuit cases cited by plaintiff

---

**7.** *See supra* note 4. PVB Administrative Law Judge Harold Berman testified that he was concerned about the possible "negative consequences" for his career at PVB stemming from his appearance at the hearing. However, he never stated that this concern was in any manner connected to plaintiff's transfer; indeed it could just as well be due to the ordinary reluctance of any employee to take an action that he believes might be perceived by his employer as antagonistic to the employer's interests.

**8.** This conclusion is, in fact, reinforced by the fact that the eight anonymous PVB employees are unwilling to make their affidavits public.

involved *direct* infringement of first amendment rights, such as the denial of permits to religious organizations for use of school premises, *Deeper Life Christian Fellowship, Inc. v. Board of Education of the City of New York*, 852 F.2d 676, 679 (2d Cir.1988), an ordinance prohibiting topless dancing, *Salem Inn, Inc. v. Frank*, 501 F.2d 18, 21 (2d Cir.1974), *aff'd in part, rev'd in part*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), and a rule prohibiting the solicitation of funds in schools, *Katz v. McAulay*, 438 F.2d 1058, 1060 n. 3 (2d Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). These cases are, therefore, clearly inapposite to the case at bar.[9]

■ Finally, a related consideration is plaintiff's considerable delay in seeking injunctive relief. The Second Circuit has observed that "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction." *Citibank, N.A., supra,* 756 F.2d at 276. Shortly after its decision in *Citibank, N.A.*, the Second Circuit further held in *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir.1985), that "[l]ack of diligence, standing alone, may ... preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm...." *See also Borey, supra,* 934 F.2d at 35 (delay in seeking preliminary injunction belies claim of irreparable harm); *Abish v. Northwestern National Insurance Co.*, 924 F.2d 448, 454 (2d

Cir.1991) (same); *Railroad P.B.A. of the State of New York, Inc. v. Metro–North Commuter Railroad*, 699 F.Supp. 40, 43 (S.D.N.Y.1988) (delay in seeking enforcement of rights undercuts argument that injunctive relief is necessary); *Manhattan State Citizens' Group, Inc. v. Bass*, 524 F.Supp. 1270, 1275 (S.D.N.Y.1981) (delay in seeking preliminary injunction "militates against the claim of irreparable injury and may be ground for barring injunctive relief."). These conclusions are consistent with the ancient maxim that "equity aids the vigilant, not those who slumber on their rights." 11 Wright & Miller, *Federal Practice and Procedure* § 2946 at 417 (1973).

In the instant case, plaintiff was informed of his discharge on May 24, 1990, and that discharge was made effective June 1, 1990. Plaintiff did not commence this action, however, until May 22, 1991, almost one year later. This delay in seeking relief bolsters the Court's conclusion that there has been an insufficient showing of irreparable harm to justify issuance of a preliminary injunction.[10]

In the absence of irreparable harm, "which constitutes an absolute requirement for an award of injunctive relief," *American Postal Workers, supra,* 766 F.2d at 723, the Court need not consider the further requirements for the granting of a preliminary injunction.

### Conclusion

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.

---

**9.** Plaintiff's reliance on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) is also misplaced. In that case, a three-justice plurality of the Supreme Court found irreparable harm where "[i]t [was] clear ... that First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Elrod, supra,* 427 U.S. at 373, 96 S.Ct. at 2689. Such is not the case in the present action, and

for that reason, among others, the Second Circuit distinguished *Elrod* in both *Savage,* 850 F.2d at 67, and *American Postal Workers,* 766 F.2d at 722.

**10.** The pendency of the DOI investigation during much of this period is irrelevant to this analysis.