Ralph E. STEVENSON, Plaintiff,

v.

STATE AND LOCAL POLICE AGEN-
CIES; Erie County District Attorney;
Board of Examiners of Sex Offenders;
and Supreme Court Justice P. Wolf-
gang, Defendants.

No. 99–CV–6041L.

United States District Court,
W.D. New York.

March 23, 1999.

Ralph E Stevenson, Buffalo, NY, plain-
tiff pro se.

## DECISION AND ORDER

LARIMER, Chief Judge.

### *INTRODUCTION*

Plaintiff Ralph E. Stevenson has filed
this *pro se* action seeking to enjoin the
defendants from enforcing the application
of the Sex Offender Registration Act
("SORA"), New York Correction Law
§§ 168 to 168–v, to him pending the deter-
mination of his petition for a writ of habe-
as corpus which is presently pending in
this Court under civil number 98–CV–
6557L. Petitioner has also requested per-
mission to proceed *in forma pauperis*
(Item 2). For the reasons discussed be-
low, plaintiff's request to proceed as a poor
person is granted, his request for injunc-
tive relief is denied, and his complaint is
dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS

Following a guilty plea, plaintiff was convicted in 1996 of one count of Sexual Abuse in the First Degree and one count of Attempted Use of a Child in a Sexual Performance, N.Y.Penal L. §§ 130.65, 260.10. Plaintiff's guilty plea was made in satisfaction of two indictments charging him with various offenses stemming from his sexually assaulting several females, two of whom were less than eleven years old, and one of whom was his fifteen-year-old daughter.

On December 2, 1998, shortly before he was released from prison, plaintiff filed a habeas petition pursuant to 28 U.S.C. § 2254 in which he claims that his guilty plea was involuntary, he was provided with ineffective assistance of counsel and denied the right to appeal, and his privilege against self-incrimination was violated. This habeas petition is still pending.

In mid-December 1998, plaintiff, who was represented by counsel, appeared before defendant New York State Supreme Court Justice Penny Wolfgang for the determination of his risk level for sex offender reporting purposes. Plaintiff states that at that hearing he explained to Justice Wolfgang that he had a habeas corpus petition pending in federal court which he believed would be granted because of the unconstitutional nature of his conviction, and that therefore it would be improper to require him to report as a sex offender until the habeas decision issued. Despite this argument, Justice Wolfgang determined that plaintiff should be considered a level three sex offender.

Plaintiff, who is now out of prison, seeks to enjoin the application to him of the sex offenders law, in particular the reporting and publication provisions of it, pending the determination of his habeas petition. His rationale for this request is essentially that the effect of the publication of the information about him cannot be undone, and should his habeas petition be granted, he will already have been irreparably damaged. Plaintiff does not appear to contend that SORA itself is unconstitutional, but only that his rights will be violated if he is forced to comply with SORA while his habeas petition is pending.

Plaintiff also contends that the law's requirement to report his address to the authorities violates his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment liberty rights.

Plaintiff's sole request for relief is that the Court issue a preliminary injunction preventing the defendants from requiring him to comply with the sex offenders requirements until his habeas petition has been decided.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), plaintiff is granted permission to proceed *in forma pauperis.* Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

Here, because plaintiff has been granted *in forma pauperis* status, the Court has reviewed plaintiff's complaint under § 1915(e) and finds that plaintiff's claims fail to state a claim upon which relief may be granted. As a result, this action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff seeks a preliminary injunction. As an initial matter, the Court points out to plaintiff that a preliminary injunction will not issue without notice to the adverse party. Fed.R.Civ.P. 65(a)(1). It does not appear that the plaintiff has provided notice of this request to the defendants in this case. However, given that the only

basis for plaintiff's request for the injunction is his speculation that his pending habeas petition will be granted, the Court finds that the request for injunctive relief must be denied and thus it can dispense with the notice requirement in this instance.

> In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

*Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989) (citing *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir. 1982) and *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

The Second Circuit has stated that " '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice and Procedure,* § 2948 at 431 (1973) (footnote omitted)). *Accord Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990). Whether a particular harm is irreparable turns on its imminence and the lack of an adequate remedy at law. *See Reuters,* 903 F.2d at 907 (citations omitted) ("Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages."). Finally, "[i]n making the determination of irreparable harm, both harm to the parties and to the public may be considered." *Long Island R.R. Co. v. Inter-national Assoc. of Machinists,* 874 F.2d 901, 910 (2d Cir.1989), *cert. denied,* 493 U.S. 1042, 110 S.Ct. 836, 107 L.Ed.2d 831 (1990).

As for the second prong of the standard for issuance of injunctive relief, where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Plaza Health Laboratories,* 878 F.2d at 580 (citing *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981), and *Medical Society of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977)).

In this case, plaintiff seeks to enjoin the application of the statutory scheme established by the state to protect the community from what the state sees as the risks posed by convicted sex offenders. In this regard,

> [t]he Act establishes three levels of risk to which an offender may be assigned, depending on the danger the offender poses to the community: level one (low risk), level two (moderate risk), and level three (high risk). See § 168–1(6). Whether a convicted sex offender is to be classified at risk level one, two, or three is determined by consideration of approximately 15 factors, weighted and totalled to arrive at a score that purports to indicate his likelihood to commit a repeat offense.

*Doe v. Pataki,* 3 F.Supp.2d 456, 462 (1998). SORA also establishes a duty for sex offenders to register with the local authorities (§§ 168–f, 168–g) for a minimum of ten years (§ 168–h) and advise local officials of address changes (§ 168–j); the failure of a sex offender to comply with the require-

ments to register carries criminal penalties (§ 168–t). In addition, SORA establishes a 900 number which people may call to obtain information about registered sex offenders (§ 168–p), and, with respect to violent sex offenders, a subdirectory categorized by county and zip code which includes extensive information about the offender (including the exact address and photograph of the sex offender together with his name, physical description, age and distinctive markings, background information such as the sex offender's crime of conviction, modus of operation, type of victim targeted, and a description of special conditions imposed on the sex offender) is distributed to local officials for public access (§ 168–q). SORA establishes a procedure by which a sex offender is categorized by level of risk (§ 168–l):

(c) If the risk of repeat offense is high and there exists a threat to the public safety, such sex offender shall be deemed a "sexually violent predator" and a level three designation shall be given to such sex offender. In such case, the law enforcement agency having jurisdiction and the law enforcement agency having had jurisdiction at the time of his conviction shall be notified and may disseminate relevant information which may include the sex offender's exact address, a photograph of the offender, background information including the offender's crime of conviction, modus of operation, type of victim targeted, and the description of special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender. Any entity receiving information on a sex offender may disclose or further disseminate such information at their discretion. In addition, in such case, the information described herein shall also be provided in the subdirectory established in this article and notwithstanding any other provision of law, such information shall, upon request, be made available to the public.

N.Y. Corrections Law, § 168–l. According to plaintiff, he has been determined to be a level three (high risk) sex offender, and thus the notification provisions of § 168–l(c) apply to him and are among the provisions of SORA which plaintiff is seeking to enjoin.

■ Applying the standards in this circuit for determining the propriety of preliminary injunctive relief, I find that plaintiff is clearly not entitled to the relief he seeks, that he has not stated a claim upon which relief can be granted, and that the complaint must be dismissed.

■ "Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir.1997). Among the factors that the court can take into account is the effect that issuance of an injunction might have on public safety. *NAACP v. Town of East Haven*, 70 F.3d 219, 223–24 (2d Cir.1995).

In the case at bar, the principal harm alleged by plaintiff is that his neighbors and other members of the public will find out that a convicted sex offender is living among them. According to plaintiff, even if his habeas petition is granted, that harm cannot be undone.

The impact on plaintiff of the dissemination of this information, however, is diminished by the fact that his conviction is already a matter of public record; for that matter, so are this action and his habeas petition. In fact, the more repugnant or notorious the crime, the more likely it will be that the general public will already have heard of the criminal. Even absent the procedures provided for by SORA, then, there is no guarantee that plaintiff would be able to keep his criminal record a secret.

The hardships that an injunction would impose on defendants, however, which is largely coextensive with the possible harm faced by the public as a whole, is substantial. Obviously the state has a strong interest in ensuring the safety and well-being of its citizens. Likewise, it is not unreasonably for members of the public to want to know whether someone in their midst has been convicted of a sex offense, particularly when the victims of the offense were children. To prevent the state from apprising citizens of such information could have consequences far more dire than the alleged harm that will be visited on the plaintiff if his requested injunction is not granted. *See Doe v. Pataki,* 120 F.3d 1263, 1285 (2d Cir.1997) (registration under SORA "serves the general goal of protecting members of the public from the potential dangers posed by convicted sex offenders"), *cert. denied,* —— U.S. ——, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998); *Roe v. Office of Adult Probation,* 125 F.3d 47, 54 (2d Cir.1997) (Connecticut legislature was entitled to promulgate sex-offender registration policies that it believed would serve to protect community); *E.B. v. Verniero,* 119 F.3d 1077, 1098 (3d Cir.) (New Jersey sex-offender registration law was reasonably related to legitimate goals of "identifying potential recidivists, notifying those who are likely to interact with such recidivists to the extent necessary to protect public safety, and helping prevent future incidents of sexual abuse"), *cert. denied,* 119 F.3d 1077 (1997); *Roe v. Farwell,* 999 F.Supp. 174, 187 (D.Mass.1998) ("The goal of public notification is to reduce the likelihood of re-offense by a sexual offender by giving law enforcement necessary information to be aware of potential dangers, the public necessary information in order to take appropriate steps to minimize a harmful encounter with a sex offender, and to deter the sex offender from reoffending because of the increased likelihood of apprehension"); *Doe v. Kelley,* 961 F.Supp. 1105, 1109 (W.D.Mich.1997) ("the Michigan Legislature ... sought to make information available to the citizenry concerning persons residing in their communities who have engaged in sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders, are recognized to be resistant to reformation and deemed to pose potential danger of repeat misconduct").

In addition, if the relief sought here—enjoining the state from enforcing compliance with one of its laws until plaintiff's habeas petition is decided—were to be made available, the effects could be far-reaching and could potentially wreak havoc with the state's criminal justice system. Convicted sex offenders could indefinitely delay enforcement of SOLA by filing endless appeals, habeas corpus petitions, and other collateral attacks on their convictions in both state and federal court. Such a result would not only thwart the legitimate intent behind SOLA itself, but would run contrary to general practices in the administration of criminal justice, which by and large do not permit convicted felons to postpone the legally mandated effects of their convictions until they have exhausted every available avenue by which to challenge those convictions.

For example, under federal law there is a statutory presumption that convicted defendants should be detained during the pendency of their appeals. 18 U.S.C. § 3143(b). Moreover, once a defendant has been convicted at trial, the presumption of his innocence disappears. *Delo v. Lashley,* 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993); *Herrera v. Collins,* 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). To hold that a habeas corpus petitioner, whose conviction must necessarily have been affirmed on direct appeal in state court, can avoid having to comply with SOLA simply because of the mere possibility that his habeas petition may be granted would run counter to these established principles, would thwart the legitimate ends that SOLA was enacted to achieve, and would encourage convicted sex offenders to file repeated, baseless habeas corpus petitions for the sole

purpose of avoiding SOLA's registration and publication requirements.

 I also believe that the harm here, *i.e.* the alleged violation of plaintiff's rights by disseminating the fact of his conviction, which he claims was obtained in violation of his constitutional rights, is too speculative to warrant injunctive relief. "A preliminary injunction is considered an 'extraordinary remedy that should not be granted as a routine matter.'" *Distribution Systems of America, Inc. v. Village of Old Westbury,* 785 F.Supp. 347, 352 (E.D.N.Y.1992) (quoting *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990)). Therefore, the mere possibility of harm is insufficient to justify granting a preliminary injunction. *See Borey v. National Union Fire Insurance Co.,* 934 F.2d 30, 34 (2d Cir.1991); *Distribution Systems of America, Inc.* 785 F.Supp. at 352; *Costello v. McEnery,* 767 F.Supp. 72, 76 (S.D.N.Y.), *aff'd,* 948 F.2d 1278 (1991), *cert. denied,* 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). Here, the possibility of harm to plaintiff is asserted to arise, not from the requirements of SORA that plaintiff report and register and the information about him be disseminated, but that plaintiff be required to comply with the law *prior* to the determination of his habeas petition. In other words, plaintiff's claim is in essence that compliance and dissemination will cause him irreparable injury if—but only if—he is ultimately successful on his habeas petition. Thus, plaintiff asserts nothing more than the mere possibility of future harm based on the highly speculative possibility that he will succeed on his habeas petition. This does not constitute the actual irreparable harm necessary to support a request for a preliminary injunction.

Plaintiff has also failed to demonstrate a likelihood of success on the merits of his claim. Plaintiff conclusorily alleges violations of his liberty and Eighth Amendment rights by the requirement that he report pending the determination of his habeas petition, but plaintiff's claims do not challenge SORA itself, nor do they raise issue with the process he received at the hearing at which his status was determined or his status as a level three offender. Instead, plaintiff is simply challenging the application of SORA to him prior to the determination of his habeas petition. Under these circumstances, the Court finds that plaintiff's conclusory constitutional allegations fail to state a cognizable constitutional claim. Thus, plaintiff's request for a preliminary injunction must be denied because plaintiff has demonstrated neither irreparable harm nor a likelihood of success on the merits. This action hereby is dismissed with prejudice.

## ORDER

IT HEREBY IS ORDERED, that the plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff's request for a preliminary injunction is denied; and

FURTHER, that the complaint is dismissed with prejudice.

IT IS SO ORDERED.