Joann **MEADOWS** and Patricia Smouse, Plaintiffs,

v.

**STATE UNIVERSITY OF NEW YORK AT OSWEGO, Bruce Lester, Marta Santiago, Stephen Weber, Jane Milley, Deborah Stanley and Sandra Moore, individually and in their official capacities, Defendants.**

No. 92–CV–1492 FJS.

United States District Court, N.D. New York.

Oct. 4, 1993.

Seidenberg, Strunk and Goldenberg, Syracuse, NY, for plaintiffs; Faith A. Seidenberg, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, Dept. of Law, Albany, NY, for defendants; Steven H. Schwartz, Asst. Atty. Gen., of counsel.

### MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### INTRODUCTION

This matter is presently before the court on a motion by Plaintiffs for a preliminary injunction or, in the alternative, a hearing to determine whether an injunction should issue against Defendants. The court heard oral argument from counsel in Syracuse, New York on June 4, 1993. At that time, the court directed the parties to submit additional briefing on, *inter alia,* Plaintiffs' claim of irreparable harm. After having reviewed the entire file in this matter, including the additional briefing, the court makes the following findings.[1]

### BACKGROUND

Plaintiffs are employed by State University of New York at Oswego ("SUNY Oswego"), Ms. Meadows as a tenured professor and Ms. Smouse as an untenured lecturer. Ms. Meadows has been employed by Oswego for twenty-two years; Ms. Smouse, for eight years. In the fall of 1991 Dr. Patricia Peterson, the former chair of the Women's Health and Physical Education Department, filed a Title IX complaint with the Office of Civil Rights ("OCR"), claiming "that the female students at SUNY Oswego were not given as good an education in sports as the male students as mandated by Title IX." Plaintiffs' Memorandum of Law in Support of Motion for a Temporary [sic] Injunction ("Plaintiffs' Memo."), Doc. 9, at 2.

Plaintiffs contend that although they did not file the complaint, "it was widely believed that [Plaintiffs] were moving forces in the institution of said complaint," Plaintiffs' Motion for a Preliminary Injunction ("Plaintiffs' Motion"), Doc. 9, at ¶ 2,[2] and that, since the fall of 1991, they "have been subjected to a

---

1. On August 25, 1993, the court issued an Order which denied the plaintiffs' request for a preliminary injunction, and informed the parties that this Memorandum–Decision would follow.

2. Although this document was initially docketed as an "affidavit," as it is an unsworn document, the court cannot consider it as such.

pattern of harassment which began after they were perceived to have been behind [the Title IX complaint]." Plaintiffs' Memo. at 2.

Plaintiffs assert that they subsequently filed their own complaints[3], and thereafter the harassment increased. Ms. Smouse maintains that she attempted to file a complaint with the affirmative action office at SUNY Oswego in July 1992 (through defendant Santiago), but that Ms. Santiago refused to take her complaint. Smouse Aff., Doc. 9, Exh. 13 at 5. Ms. Santiago disputes this. *See* Santiago Aff., Doc. 13, at ¶¶ 3–10.[4] Ms. Smouse further alleges that later in July 1992 defendant Moore, the newly appointed Women's Health and Physical Education Director, told Ms. Smouse that she "would be fired, or words to that effect, if [she] filed a complaint." Smouse Aff., Doc. 9, Exh. 13 at ¶ 6. Ms. Smouse claims that she then told Ms. Moore that she had already filed a complaint.[5] Shortly thereafter, Ms. Smouse received a letter from defendant SUNY Oswego stating that it would not renew her position after August 31, 1993.

Ms. Smouse subsequently filed a grievance with her union, apparently alleging "that she was non-renewed in retaliation for having filed a discrimination complaint [with defendant Santiago] under the SUNY Procedures." Plaintiffs' Motion, Doc. 9, Exh. "1". In support of this grievance, the union representatives on behalf of Ms. Smouse asserted that the filing of the complaint was "protected activity."[6] *Id.* at [2] (unnumbered). The grievance further alleged that, although in June 1992 the Personnel Committee on Health, Physical Education and Athletics recommended that Ms. Smouse's contract be extended by another three-year term, *see* Plaintiffs' Memo., Exh. "3", she was notified in August 1992 (*after* she filed the complaint with the affirmative action office) that SUNY Oswego would not renew her contract after August 31, 1993.

Defendant Stanley (Executive Assistant to the President of SUNY Oswego), stated, *inter alia*, in her denial of the grievance that "[f]iling a complaint under the SUNY procedures for review of allegations of discrimination is not within the meaning of 'protected activity' under Section 209 and 209–a. 1(a) and (c) [of the Public Employees Fair Employment Act]." Plaintiffs' Motion, Doc. 9, Exh. 1 at [2] (unnumbered).[7] Ms. Stanley also found, in denying Ms. Smouse's grievance, that "there were several legitimate business reasons for the non-renewal of Ms. Smouse." *Id.*

In her supporting affidavit, Ms. Smouse states that "[u]nless a temporary injunction is issued, there will be a chilling effect on other teachers, to speak out and a gravely sad lesson to students about their rights in a democracy." Plaintiffs' Motion, Doc. 9, Exh.

---

3. Ms. Meadows alleges that she filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the OCR, but does not specify the date of filing. Plaintiffs' Memo., Doc. 9, Exh. 14 at ¶ 8. Apparently, Ms. Smouse alleges only that she filed a complaint with the affirmative action office at SUNY Oswego.

4. The court infers from the papers that Ms. Smouse *did* actually file the complaint, as it provided the basis for Ms. Smouse's later grievance with the union, and that Ms. Smouse's allegation is rather that Ms. Santiago " 'blocked' processing of the discrimination complaint." Plaintiffs' Motion, Doc. 9, Exh. 1.

5. It is not clear to which complaint Ms. Smouse refers. According to her affidavit, she filed an "internal grievance" prior to her conversation with defendant Moore, and according to defendant Stanley's denial of the grievance, the "internal grievance" and the affirmative action complaint are one and the same. Although the court could infer from Ms. Seidenberg's declaration that Ms. Smouse was referring to an EEOC complaint when informing Ms. Moore that she had already filed a complaint, *see* Plaintiffs' Motion at ¶¶ 5–6, the court will assume for purposes of this motion that the complaint referred to was the internal grievance, i.e., the affirmative action complaint filed by Ms. Smouse, as stated in her affidavit.

6. Although Ms. Smouse does not specify what is meant by "protected activity," the court infers from Ms. Stanley's decision that Ms. Smouse claimed that the filing was protected activity under the Public Employees Fair Employment Act, N.Y.Civ.Serv.Law §§ 209 and 209–a. (McKinney 1983).

7. Contrary to Plaintiffs' assertions, Ms. Stanley did not state in her denial that the filing of a complaint was not protected activity *per se;* she stated that it was not protected activity *under the particular sections that, apparently, Ms. Smouse referred to in her grievance.*

13, ¶ 9.[8] Ms. Meadows similarly states in her affidavit that "[u]nless an injunction is issued the harassment will not abate and I will continue to be punished for exercising my First Amendment rights to point out the inequities in the education of male and female students." *Id.,* Exh. 14, ¶ 9.

Although Ms. Meadows has tenure and therefore cannot be non-renewed, she alleges that Defendants have made "it impossible to remain employed," *id.* at 2, by, *inter alia,* pressuring her to take on the position of women's head basketball coach, a position that she left a few years ago upon her doctor's advisement due to a medical condition. *Id.,* Exh. "5".[9] Ms. Meadows further alleges that Defendants have retaliated against her by taking away her deanship position, denying her access to an athletic building for which she had previously been issued keys, and attempting to "drive a wedge between her and the male coaches." *Id.* at 3.

Plaintiffs brought the underlying action pursuant to Title IX, 20 U.S.C. §§ 1681 *et seq.;* 42 U.S.C. §§ 1983, 1985(3) and 1986; the First Amendment to the United States Constitution, N.Y. Civ.Serv. Law § 75–b, and N.Y. Exec. Law § 290 *et seq.* Apparently, Plaintiffs seek injunctive relief pursuant only to 42 U.S.C. § 1983, based on their allegations of deprivation of their First Amendment rights.[10]

## DISCUSSION

In resolving this motion, the court notes first that if Plaintiffs' allegations are *bona fide,* they indicate an intolerable atmosphere for an educational institution. The court therefore hopes that the merits of this case will be resolved as expeditiously as possible. Be that as it may, the court is constrained to deny Plaintiffs' motion, as Plaintiffs have failed to show irreparable harm under the facts when analyzed under the relevant case law in this circuit.

■ It is well established in the Second Circuit that a party seeking a preliminary injunction must establish (1) irreparable injury and (2) a likelihood of success on the merits or a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor. *See, e.g., American Postal Workers Union, AFL–CIO v. United States Postal Service,* 766 F.2d 715, 721 (2d Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979)). Thus, a showing of irreparable harm is a threshold requirement Plaintiffs must establish in order to obtain a preliminary injunction.

### 1. Irreparable Harm

■ It is well established that, absent extraordinary circumstances, loss of income and/or other purely financial concerns do not constitute irreparable harm. *E.g., Holt v. Continental Group, Inc.,* 708 F.2d 87, 90–91

---

**8.** Apparently, as additional support for the allegation that other employees' First Amendment rights have been and will be chilled by Defendants' actions, Plaintiffs have submitted four unsworn statements apparently signed by other employees at the defendant institution. *See* Plaintiffs' Suppl. Memo., Doc. 23, Exh. "C". Aside from the court's hesitancy to accord these statements much significance due to their unsworn nature, the court questions their probative value, as their authors mainly recite in general, conclusory terms that there is a "chill" on the campus.

Moreover, the defendants submit seven affidavits that attest to the opposite conclusion.

**9.** Initially, Ms. Meadows claimed irreparable harm due to Defendants' demand that Ms. Meadows assume the head coach position unless Defendants' physician affirmed Ms. Meadows's assertion that she was medically unable to assume the position. Plaintiffs' Motion, Doc. 9, Exhs. 5–7. Since the court heard oral argument, Defen-

dants' physician affirmed Ms. Meadows's contention, and Defendants withdrew this demand. Plaintiffs' Suppl. Memo., Doc. 23, Exhs. "A" and "B". Nevertheless, Ms. Meadows maintains that a "threat" remains, as indicated by a letter from defendant Milley in which she states that "if you would like to explore reasonable accommodations under applicable State or Federal Disabilities Law [ ] which might allow you to take on the assignment of head coach even in light or your medical condition, please contact my office...." Plaintiffs' Suppl. Memo., Doc. 23, Exh. "B".

**10.** Although Plaintiffs' papers frequently refer to "retaliation," their claim for injunctive relief is not brought under retaliation claims *per se,* but on a "chilling" of First Amendment rights caused by Defendants' alleged retaliation and harassment.

(2d Cir.1983) (citations omitted). Thus, Plaintiffs must assert more than this to satisfy the irreparable harm standard.

Plaintiffs contend that an injunction is warranted here in that "[u]pon information and belief, the threatened acts of retaliation will have a chilling effect on the exercise of First Amendment rights by Plaintiffs and other employees of [SUNY Oswego]." *Id.* at ¶ 10. Their basis for irreparable harm therefore appears to be that Defendants' alleged retaliatory actions against Plaintiffs for having made discrimination claims against Defendants have produced, and will continue to produce, a "chilling effect" on their First Amendment rights.

In support of this contention, Plaintiffs allege that "[t]he defendants ha[ve] discriminated against and harassed plaintiffs in order to silence them," Plaintiffs' Suppl. Memo. at 5, and that "[s]uch actions have resulted in a 'chill' of the plaintiff's [sic] First Amendment rights which is unconstitutional whether or not it has succeeded in silencing the plaintiffs." *Id.* In their original papers, Plaintiffs appeared to assert the First Amendment rights of other faculty members in addition to their own as a basis for irreparable harm; upon request by the court for clarification of this, however, Plaintiffs stated that they

> do not allege that they have standing to assert the First Amendment rights of other faculty members as part of their proof of entitlement to a preliminary injunction. Claims by other employees of the defendant university, however, that they have been influenced by the "chill" emanating from the defendant's retaliatory discrimination against the plaintiffs are directly relevant to the plaintiffs' "claim of specific present objective harm ... [E]vidence of chill would be relevant to the plaintiff's claim that the defendant's activities did in fact result in an unconstitutional restraint on protected speech and conduct."

Plaintiffs' Suppl. Memo., Doc. 23 at 5–6 (citing *Trotman v. Board of Trustees of Lincoln University*, 635 F.2d 216, 228 (3d Cir.1980),

*cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981)).[11]

The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (citation omitted). In *Elrod,* the plaintiffs, employees of the Cook County, Illinois Sheriff's Office, alleged that they were fired or threatened with dismissal for refusing to change their political affiliations, and that this violated their constitutional rights secured by the First and Fourteenth Amendments. *Id.* at 351, 96 S.Ct. at 2678. The Supreme Court affirmed the Seventh Circuit's decision that injunctive relief was appropriate, in that First Amendment interests were either threatened or being impaired at the time relief was sought. *Id.* at 373, 96 S.Ct. at 2690. In so doing, the Court affirmed the Seventh Circuit's finding that the plaintiffs had shown sufficient irreparable injury to fulfill the threshold requirement of a preliminary injunction.

Contrasted with *Elrod* is a case in which the Second Circuit refused to grant a preliminary injunction. *Savage v. Gorski,* 850 F.2d 64 (2d Cir.1988). In *Savage,* the plaintiffs, employees of Erie County, New York, brought suit against Gorski, the newly-elected County Executive, alleging that they were discharged from employment because of their political affiliations in violation of the First Amendment. However, the *Savage* plaintiffs did not allege, nor did the court find, that they were being coerced into another political party; they claimed only that they were associated with an administration with whose philosophy and beliefs the County Executive disagreed. *Id.* at 67.

The district court granted the *Savage* plaintiffs' motion for preliminary injunction, finding, *inter alia,* that the employees' political affiliation "was a 'substantial' or 'motivating' factor for their discharge." *Id.* The Second Circuit, in reversing the district court, stated that

---

**11.** In support of this, Plaintiffs offer the unsworn statements of other faculty members referred to

previously attesting to a "chill" on campus.

[t]he precise question thus becomes whether appellees' discharge pending the outcome of their case before the district court would have a chilling effect on appellees' First Amendment rights sufficient to constitute irreparable harm. Since the source of the "chill" is the permanent loss of appellees' jobs, retaining those positions pending resolution of the case will do nothing to abate that effect.

*Savage,* 850 F.2d at 67–68. The court went on to reiterate what it had stated in another case wherein it denied a preliminary injunction on similar grounds:

[W]e fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech ... stems not from the interim discharge but from the threat of permanent discharge, which is not vitiated by an interim injunction.

*Id.* at 68 (quoting *American Postal Workers Union v. United States Postal Service,* 766 F.2d 715, 722 (2d Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986)).

Applying these cases to Ms. Smouse's position, the court cannot escape the conclusion that a preliminary injunction would do nothing to abate the chilling effect alleged, since if Ms. Smouse is presently "chilled" from asserting First Amendment rights, the court can only deduce that an interim injunction would not thaw this "chill," as the threat of permanent discharge would still remain.

Nevertheless, Plaintiffs attempt to distinguish their case from *Savage* and *Postal Workers* by arguing that the source of the "chill" lies not only in the discharge of Smouse, but also in the alleged harassment of Ms. Meadows. *See* Plaintiffs' Suppl. Memo., Doc. 23, at 4–5. However, the court cannot find that Ms. Meadows has asserted a cognizable irreparable harm claim, as she no longer is in danger of having to assume the head coach position. Contrary to Plaintiffs' assertions, the court cannot find that defendant Milley's letter of June 22, 1993 constitutes a "covert threat" that if Ms. Meadows does not assume the coaching position, a position that would threaten her health, she will suffer more retaliation. Even assuming that Defendants' somewhat baffling suggestion that Ms. Meadows consider assuming the position of head coach notwithstanding her medical condition "puts inordinate pressure on [Ms. Meadows]," Plaintiffs' Suppl. Memo. at 3, this does not constitute a threat of irreparable harm. Moreover, the court fails to see how enjoining Defendants from non-renewing Ms. Smouse would alleviate the alleged harassment of Ms. Meadows.

Thus, Ms. Meadows's claim of irreparable harm fails and, since the court finds that Ms. Smouse's case is indistinguishable from *Savage* and *Postal Workers* in that a preliminary injunction will not abate the alleged "chill," the court can find no irreparable harm in this case. As Plaintiffs have failed to establish irreparable harm, the court need not examine the second prong of the preliminary injunction standard.

## CONCLUSION

As Plaintiffs have failed to establish irreparable harm on the grounds of a First Amendment "chill," the court must deny their motion for a preliminary injunction.

**IT IS SO ORDERED.**