**Edward SNEAD, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff,**

**v.**

**Karen BURSTEIN, Individually and as the President of the Civil Service Commission of the State of New York, and as Commissioner of the New York State Department of Civil Service; the New York State Civil Service Commission and the New York State Department of Civil Service, Defendants.**

**No. 86–CV–462.**

United States District Court, N.D. New York.

May 30, 1986.

Bloomberg & Santola, Albany, N.Y., for plaintiff; John J. Ciavardoni, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendants; Nancy Gleason, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff moved for a preliminary injunction restraining defendants from making any personnel changes based on the results of a New York Department of Civil Service examination that arguably had racially adverse impact. Because plaintiff failed to demonstrate irreparable harm if the preliminary injunction is not granted, the motion is denied.

## FACTS

Plaintiff is a black male who since 1965 has been employed in various positions by the Department of Civil Service of the State of New York. In November 1979 plaintiff reached the permanent position of Senior Minority Group Personnel Specialist, salary grade 18, in the New York State Department of Civil Service. Plaintiff remained in that position until December 1982, when he received a provisional appointment pursuant to New York Civil Service Law § 65 [1] to the position of Associate Staffing Services Representative, salary grade 23. Plaintiff received the provisional appointment because at that time there was not an appropriate eligible list available for filling the vacancies in the grade 23 position.

Sometime during the summer of 1984, defendants began the process of preparing an examination, the results of which would be used to promulgate an eligible list to fill the position of Associate Staffing Services Representative. The resulting test, Examination No. 38–436, consisted of three parts: a series of short-answer essay questions, an oral test and a writing skills test.

The written portion of the examination was given on March 9, 1985. A total of 111 candidates sat for the written examination. Of the 111 candidates, 80 were non-minori-

---

1. § 65 Provisional appointments

1. Provisional appointments authorized. Whenever there is no appropriate eligible list available for filling a vacancy in the competitive class, the appointing officer may nominate a person to the state civil service department or municipal commission for non-competitive examination, and if such nominee shall be certified by such department or municipal commission as qualified after such non-competitive examination, he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination. Such non-competitive examination may consist of a review and evaluation of the training, experience and other qualifications of the nominee, without written, oral or other performance tests.

2. Time limitation on provisional appointments. No provisional appointment shall continue for a period in excess of nine months. The civil service department shall for competitive positions within its jurisdiction, and a municipal civil service commission shall for competitive positions within its jurisdiction, order a civil service examination for any position held by provisional appointment for a period of one month and such department or commission shall conduct a civil service examination, or see that such an examination is conducted, as soon as practicable thereafter, in order to prevent the provisional appointment from continuing for a period in excess of nine months.

3. Termination of provisional appointments. A provisional appointment to any position shall be terminated within two months following the establishment of an appropriate eligible list for filling vacancies in such positions; provided, however, that where there are a large number of provisional appointees in any department or agency in the service of the state or any civil division thereof to be replaced by permanent appointees from a newly established eligible list, and the appointing officer or body deems that the termination of the employment of all such provisional appointees within two months following establishment of such list would disrupt or impair essential public services, evidence thereof may be presented to the civil service department or municipal commission having jurisdiction which, after due inquiry, and upon finding that it is in the best interest of the public service, may waive the provisions of this subdivision requiring the termination of the employment of provisional appointees within two months following the establishment of an appropriate eligible list and authorize the termination of the employment of various numbers of such provisional appointees at stated intervals prescribed by such commission; provided, however, that in no case shall the employment of such provisional appointee be continued longer than four months following the establishment of such eligible list.

4. Successive provisional appointments. Successive provisional appointments shall not be made to the same position after the expiration of the authorized period of the original provisional appointment to such position; provided, however, that where an examination for a position or group of positions fails to produce a list adequate to fill all positions then held on a provisional basis, or where such list is exhausted immediately following its establishment, a new provisional appointment may be made to any such position remaining unfilled by permanent appointment, and such new provisional appointment may, in the discretion of the appointing authority, be given to a current or former provisional appointee in such position, except that a current or former provisional appointee who becomes eligible for permanent appointment to any such position shall, if he is then to be continued in or appointed to any such position be afforded permanent appointment to such position.

N.Y.Civ.Serv.Law § 65 (McKinney 1983).

ty candidates and 31 were minority candidates (21 Blacks, 9 Hispanics, 1 Asian). Of the 80 non-minorities who sat for the examination, 11 achieved passing scores. Of the 31 minority candidates who sat for the examination, 1 achieved a passing score. Plaintiff did not achieve a passing score.

The results of the examination represent a 13.75% passing rate for non-minorities and a 3.22% passing rate for minorities. The Equal Employment Opportunity Commission has established the following rule to determine adverse impact from examination results:

> A selection rate for any race, sex, or ethnic group which is less than four-fifths (or eighty percent) of the rate for the group with the highest rate will generally be regarded by Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.

29 C.F.R. § 1607.4(d) (1985).

The selection rate for minorities was in this case less than 80% of the selection rate for non-minorities. For the purposes of this opinion, the court will assume that the passing rate does represent an adverse impact.[2]

On February 7, 1986 plaintiff was advised that his provisional appointment would be terminated and that he would be reinstated to his permanent grade 18 position on May 1, 1986. Permanent appointments to the Associate Staffing Services Representative positions will be made on June 1, 1986.

On April 25, 1986 plaintiff commenced this action, seeking declaratory and injunctive relief under 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e et seq. On April 28, 1986 plaintiff sought a temporary restraining order, basically requesting that the court restrain defendants from making any employment determinations on the basis of the examination. The temporary restraining order was denied on April 29, 1986. The court issued an order to show cause on plaintiff's motion for a preliminary injunction. Hearings on the motion for a preliminary injunction were held on May 7 and May 8, 1986.

## DISCUSSION

Plaintiff began this action on behalf of himself and of other persons similarly situated. Plaintiff has not sought certification of the class by the court nor has he demonstrated that the requirements of Rule 23, Fed.R.Civ.P., have been satisfied. Therefore, for the purpose of the preliminary injunction, this suit will be considered as that of an individual plaintiff.

The issue before this court is whether injunctive relief is appropriate to avoid the effects of an examination that had a racially adverse impact. The standard in the Second Circuit for injunctive relief "clearly calls for a showing of (a) irreparable harm and (b) either (1) the likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Jackson Dairy Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979). As with other equitable remedies, "where money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law." *Id.*, *see also Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d Cir.1986). Given that a showing of irreparable harm is an absolute requirement for a preliminary injunction (*Triebwasser & Katz v. American Telephone and Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir.1976)), the court will address this issue before looking into the other prongs of the *Jackson Dairy* test.

---

**2.** In the hearings both sides presented evidence on whether the universe in this case was large enough to allow statistically significant conclusions from the test results. The court will not discuss this issue now, since it is not required to determine whether injunctive relief is appropriate.

### 1. Lost Opportunity

In the present case plaintiff alleges two kinds of harm. First, he alleges that the lost opportunity to compete for a grade 23 position at this time constitutes irreparable harm. Plaintiff claims that "this opportunity to compete fairly and in accordance with law against all persons in this test field will be lost forever." Plaintiff's Post-Hearing Memorandum of Law, at 3. Plaintiff further alleges that:

The eligible list established by defendants is already being used to make permanent appointments to the position of Associate Staffing Services Representative, effective June 1, 1986. Plaintiff, as well as the other provisional employees, have been removed from their positions and have been replaced by non-minority candidates from the eligible list for Examination 38–436. Once these people receive permanent appointments on June 1, 1986, they will be ahead of plaintiff in the Civil Service system *forever*. As plaintiff testified, the Salary Grade 23 position of Associate Staffing Services Representative leads to transfers between and among various State agencies, and also leads to direct line promotional opportunities to the higher salary grade positions, both inside and outside the Department of Civil Service. By the time this litigation is resolved, it is highly unlikely that the persons who received permanent appointments on the basis of this examination will still be in the positions they presently occupy. In effect, before this litigation is resolved, there is a strong probability that these people will be up and/or out, and *always ahead* of plaintiff in the Civil Service system.

*Id.*

To support the "lost opportunity" argument, plaintiff refers to *Chance v. Board of Examiners and Board of Education of the City of New York*, 330 F.Supp. 203, 224 (S.D.N.Y.1971), where the court stated:

It further appears that plaintiffs would suffer greater harm from denial of preliminary injunctive relief than defendants would suffer from granting the relief.

Denial of relief would perpetuate existing racial discrimination, depriving plaintiff and others similarly situated of an equal opportunity for permanent appointment and licensing as supervisors. During the long period before the case would finally be adjudicated on the merits, permanent appointments would be made from lists promulgated by the Board which would have the effect of threatening the continued employment of those holding active appointments, since New York law requires vacancies to be filled from the eligibility lists if such lists exist.

The cited language, although relevant, is not dispositive of the case before the court. *Chance* was issued before the Second Circuit articulated the two-step test for issuing preliminary injunctions in *Jackson Dairy*, 596 F.2d at 72. In *Chance*, after making a finding of overwhelming evidence of adverse impact from examination results, the court found that the defendants failed to justify the examination procedures as job-related. The quoted excerpt, although apparently pertinent to the finding of irreparable harm, addressed more the issue of balancing of hardships, which is relevant only after a finding of irreparable harm.

Furthermore, from the sketchy information provided to the court, both in the papers and in the hearings, the opportunity to compete may not be lost even if the court refuses to grant the injunction. The defendants, in their Memorandum of Law, addressed this issue thus: "Plaintiff's second allegation of irreparable harm—permanent loss of the opportunity to compete for the Grade 23 position—overlooks the obvious fact that if this lawsuit is successful and Examination No. 38–436 is found to be invalid, plaintiff will again be afforded the opportunity to compete for the Grade 23 position." *Id.* at 9. Although defendants did not specifically show what would happen if the examination were found to be invalid, presumably, the state would offer a new test and compensate plaintiff for any lost opportunity, e.g., in seniority, plaintiff

may show he suffered. Accordingly, the court will take defendants' quoted statement to mean that plaintiff's opportunity would not be hindered in any way.

Since a successful trial on the merits would award plaintiff the opportunity to compete on the same footing as on the March 9, 1985 examination, plaintiff has failed to show irreparable harm on the grounds of lost opportunity.

### 2. Violation of Civil Rights

Plaintiff's second allegation of irreparable harm involves the violation of his civil rights. The civil right involved is liberty from unlawful discrimination in his employment opportunities, protected by Title VII of the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.* The breach of the civil right consists of economic and non-economic harm:

> Each day plaintiff spends out of his former position of Associate Staffing Services Representative,[3] and each day plaintiff is precluded from fairly competing for this opportunity to receive a permanent appointment to that position, defendants continue to violate plaintiff's Civil Rights. As established by plaintiff's testimony and his affidavit, no amount of money can compensate him for these aggregious [sic] violations, and no amount of money can compensate him for the stigma and the gross indignity he must suffer on a daily basis as a result of defendants' unlawful discrimination.

Plaintiff's Post-Hearing Memorandum of Law, at 6.

Loss of employment, humiliation and damage to reputation do not regularly amount to irreparable loss. *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 953–54, 39 L.Ed.2d 166 (1974). The Court in *Sampson*, however, also recognized that in some extraordinary circumstances, "an employee's discharge [or demotion, as in the present case] together with the resultant effect on the employee, may so far

depart from the normal situation that irreparable injury might be found." *Id.* at 92, n. 68, 94 S.Ct. at 953, n. 68.

Courts have thus had to define what situations amount to such extraordinary circumstances. In *Gibson v. Immigration and Naturalization Service,* 541 F.Supp. 131 (S.D.N.Y.1982), the court found a situation that amounted to irreparable harm when an employee of the Immigration and Naturalization Service sought injunctive relief against job reassignment which limited his eligibility for income and his promotional opportunities. The court found, based on two previous administrative agency findings of retaliatory harassment against this employee, that this was the kind of extraordinary circumstances the Court was referring to in *Sampson.* It was in this context that the district court found irreparable harm:

> In essence, plaintiff seeks to recover damages for the violation of his Title VII rights, the stigma resulting from that violation, and the humiliation he and his family will suffer from the allegedly discriminatory transfer. The court is of the opinion that given the unique nature of Title VII rights, the precise amount of these damages would be impossible to ascertain should plaintiff ultimately prevail on his claim. Accordingly, the court agrees with plaintiff's contention that where the statutory civil rights of employees are found to have been violated, irreparable injury may be presumed from the loss of human dignity which such violations engender.

*Gibson,* 541 F.Supp. at 136.

The court in *Gibson* thus created a presumptive showing of irreparable harm with a prima facie case involving Title VII violations.

However, shortly after *Gibson,* the court in *Holt v. Continental Group, Inc.,* 708 F.2d 87 (2d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984), impliedly rejected the approach of *Gibson.*

---

**3.** Plaintiff had no entitlement to remain in his provisional appointment as an Associate Staffing Services Representative (see Footnote 1).

The time plaintiff may spend out of the Grade 23 position is therefore not relevant to plaintiff's allegations of harm.

*Holt* also involved alleged violations of Title VII rights and allegations of retaliation. Even in the context of retaliatory conduct, the court found that for purposes of granting a preliminary injunction, it would not "contemplat[e] a presumption of irreparable injury in every action by a plaintiff alleging a retaliatory discharge." *Holt,* 708 F.2d at 91, discussing *Sheenan v. Purolator Courier Corp.,* 676 F.2d 877 (2d Cir.1982). If cases involving retaliatory conduct cannot rely on a presumption of irreparable harm, such a presumption is even less appropriate in a case that involves only adverse impact of an examination. *See also Nelson v. Baldrige,* 578 F.Supp. 320, 322–24 (W.D.Mo.1984) (discussing *Gibson, Holt,* and the requirement that irreparable injury be demonstrated, not merely presumed).

The extraordinary circumstances needed for a finding of irreparable harm in employment cases need not be limited to retaliatory conduct. However, it appears that all courts in this circuit which have issued a preliminary injunction based on racial discrimination in employment have based the injunction on a finding of retaliatory conduct. *See, Stewart v. I.N.S.,* 591 F.Supp. 576 (S.D.N.Y.1984); *Berman v. N.Y. City Ballet, Inc.,* 616 F.Supp. 555 (S.D.N.Y. 1985).

Whereas plaintiff's allegations and evidence may well suffice to establish a prima facie case, *see, Bushey v. N.Y. State Civil Service Commission,* 733 F.2d 220 (2d Cir. 1984), plaintiff in the present case has failed to show irreparable harm. The preliminary injunction must be denied.

It is not necessary to address the extensive testimony and evidence presented in the hearings on the development and validation of the test. To the extent the testimony and exhibits are admissible they may be relied upon in a trial. Fed.R.Civ.P. 65(a)(2).

At this time the court has addressed only whether to grant a preliminary injunction. Further action on the merits will require satisfying the jurisdictional prerequisite of a right-to-sue letter from the Equal Employment Opportunity Commission. *See, Sheenan v. Purolator Courier Corp.,* 676 F.2d 877, 881 (2d Cir.1982).

The motion for a preliminary injunction is hereby denied.