Saleem AHMAD, Plaintiff,

v.

LONG ISLAND UNIVERSITY,
Defendant.

No. 98 CV 5478 ADS.

United States District Court,
E.D. New York.

Sept. 3, 1998.

Leeds & Morelli, Carle Place (Fredric Ostrove, Of Counsel), for Plaintiff Saleem Ahmad.

Cullen and Dykman, Garden City (James G. Ryan, Of Counsel), for Defendant Long Island University.

Long Island University, Legal Department, Greenvale (George S. Sutton, Of Counsel), Co-counsel for Defendant Long Island University.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this lawsuit, the plaintiff, Dr. Saleem Ahmad ("Dr. Ahmad" or the "plaintiff"), raises claims of race and national-origin employment discrimination against his employer, the defendant Long Island University ("LIU" or the "University"). The parties appeared before the Court on August 31, 1998, to present oral argument on Dr. Ahmad's motion for a temporary restraining order ("TRO") and preliminary injunction, brought on by Order to Show Cause, enjoining LIU from terminating his employment, which was scheduled to take effect at midnight that day, and from precluding his research at the University. This opinion memorializes the substance of the Court's oral decision, rendered at the time of the parties' argument.

## I. BACKGROUND

The following factual allegations are derived from the Complaint, except where otherwise indicated.

The plaintiff is a man of Pakistani origin who, since January 1992, has been employed as an untenured, assistant professor with LIU, a private university located on Long Island, New York (Complaint at ¶ 10). Since 1992, Dr. Ahmad has "taught a number of classes ... in [LIU's] Division of Pharmacology, Toxicology and Medicinal Chemistry." (Complaint at ¶ 11). He states that throughout his employment, he never has been disciplined. On the contrary, he states that he has "received compliments from his supervisors" and earned an award from students for his excellent teaching (Complaint at ¶¶ 12, 18).

The complaint alleges that in 1993, LIU hired Dr. Michelle Bazil, a white woman, to work in a capacity "similar to Dr. Ahmad." (Complaint at ¶ 13). According to Dr. Ahmad, LIU afforded Dr. Bazil preferable treatment over the ensuing years. For example, the University assigned her to larger classes for which she was paid more, "despite the fact that she had less seniority than Dr. Ahmad." (Complaint at ¶¶ 14–16). According to Dr. Ahmad, when he inquired as to the basis for the decision to assign him to the smaller classes with correspondingly less pay, "he was not given a reason." (Complaint at ¶ 17).

Dr. Ahmad was unsuccessful in his tenure applications. He first applied in January 1997. By letter dated May 7, 1997, the University notified him that "your name was not included among those of faculty members approved for academic tenure and promotion in rank .... Consequently, your service as a faculty member at Long Island University will terminate on August 31, 1998." (Defendant's Memorandum of Law, Ex. D). According to the plaintiff, the University cited his allegedly "insufficient commitment and productivity in the areas of research and publications" as the basis for its decision (Complaint at ¶ 23). According to Dr. Ahmad, this was a pretext, since LIU knew that "from about 1994 to present [he] has been engaged in substantial medical research regarding strokes," that the plaintiff has presented his findings at a lecture in Prague, that his findings have been published in a journal, that he has published on at least seven other occasions, and that he has various other articles under consideration for publication (Complaint at ¶¶ 24–28).

In January 1998, he again applied for tenure, which LIU denied in March 1998, contrary to the recommendation of the plaintiff's immediate supervisor. The Faculty Review Committee, evidently the body responsible for determining tenure requests, allegedly told Dr. Ahmad that his publishing efforts were inadequate (Complaint at ¶¶ 29–32). Dr. Ahmad states that Dr. Bazil was granted tenure in 1998, despite the fact that "she has not completed any research of the quality or magnitude of Dr. Ahmad ... [and she] had less seniority than the plaintiff." (Complaint at ¶ 33).

According to the plaintiff, "these actions were taken against [him] on the basis of [his] race and/or Pakistani origin." (Affidavit in Support of OSC, at ¶ 4). From reading the complaint, it would appear that the only evidence supporting his theory of employment discrimination is circumstantial, in that he alleges he was treated less favorably than his white colleague, Dr. Bazil. On or about July 29, 1998, he filed a charge of discrimination with the EEOC, which issued a Notice of Right to Sue letter on August 26, 1998.

Dr. Ahmad initiated this cause of action by filing a complaint and an Order to Show Cause on August 28, 1998. His claims include violations of Title VII, and the New York Human Rights Law.

## II. DISCUSSION

### A. The Standard for Granting a Temporary Restraining Order and a Preliminary Injunction

■ At the outset, the Court observes that "[T]he standards which govern consideration of an application for a temporary restraining order ... are the same ... as those which govern a preliminary injunction." *Local 1814, Intern. Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir.1992). Accordingly, the ensuing discussion of the standards governing preliminary injunctions applies with equal force in considering the plaintiff's motion for a TRO.

■ A preliminary injunction is considered an "extraordinary" remedy that should not be granted as a routine matter. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990); *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir.1986)(preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); *Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977)(preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted"); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F.Supp. 585, 591 (E.D.N.Y.1997)(accord). Ultimately, the decision to grant or deny this "drastic" remedy rests in the district court's

sound discretion. *See American Exp. Financial Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir.1998); *Molloy v. Metropolitan Transp. Auth.*, 94 F.3d 808, 811 (2d Cir.1996).

■ "It is by this time black-letter law that the party seeking a preliminary injunction must establish that: (1) absent injunctive relief, it will suffer an irreparable injury; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips in favor of the movant." *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 696 (2d Cir. 1998); *see also Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir.1997); *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

■ A showing of irreparable harm is considered the "single most important requirement" in satisfying the standard. *See Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d at 696; *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)(recognizing that "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *National Association for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.1995)(citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 [2d Cir.1989] ); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies").

Finally, Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir.1997); *Society for Good Will to Retarded Children,*

*Inc. v. Cuomo*, 902 F.2d 1085, 1088 (2d Cir. 1990). The Court will address each of these requirements in turn.

### 1. Irreparable harm

The plaintiff contends that if he is denied injunctive relief, he will suffer irreparable harm, in that:

> If terminated, Dr. Ahmad's reputation in the teaching community will be damaged beyond repair and his research and work on strokes will be needlessly delayed and may even cease. Any delay in Plaintiff's research will not only have a negative impact on his career, but it will also deprive medical science and society at large of the fruits of his labor. The stroke is the third leading cause of death in the United States and Dr. Ahmad's research is designed to held develop stoke preventative strategies. The research has a high degree of scientific and social value. Portions of the research have already been published in one of the most prestigious medical journals in the world.
>
> Dr. Ahmad's research has provided him with a certain status and stature in the medical community. Over the course of his career Dr. Ahmad has spent considerable time conducting his research and has requested time off from his teaching duties to devote more time to his research.... Without the foundation of a University, plaintiff will be unable to continue his research and his business reputation will be irreparably harmed.

■ In the Court's view, the termination of Dr. Ahmed's employment does not rise to the level of "irreparable harm" required to grant a TRO. This issue was addressed in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), where the Supreme Court held that the injuries generally associated with a discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute the "irreparable harm" necessary to obtain a preliminary injunction. *Id.* at 89–92, 94 S.Ct. at 952–54; *see also Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir.1988)(noting that loss of employment does not in and of itself constitute irrepara-

ble injury). As the Supreme Court explained in *Sampson v. Murray:*

> The [plaintiff's] unverified complaint alleges that she might be deprived of her income for an indefinite period of time, that spurious and unrebutted charges against her might remain on the record, and that she would suffer the embarrassment of being wrongfully discharged in the presence of her co-workers. The Court of Appeals intimated that either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief. We disagree.

415 U.S. at 89, 94 S.Ct. at 952.

■ This Court recently discussed the requisite showing a movant must make to establish "irreparable injury" in the context of employment termination. In that case, *Shady v. Tyson*, 5 F.Supp.2d 102 (E.D.N.Y. 1998), a doctor initiated a § 1983 action against a medical school affiliated with the State University of New York, claiming that the nonrenewal of his faculty appointment was due to the exercise of his First Amendment right to free speech, and that he was being deprived of his property interests in his position without due process. He moved for a preliminary injunction, seeking an order enjoining the University from taking any adverse action to affect his appointment or his employment at the medical school. In finding that the plaintiff was unable to establish "irreparable harm," this Court set forth the applicable standards as follows:

> With respect to the plaintiff's employment opportunities and professional reputation ... [i]rreparable injury along these lines can only be established by a clear demonstration that the plaintiff: (1) has little chance of securing future employment; (2) has no personal or family resources; (3) has no private unemployment insurance; (4) is unable to finance a loan privately; (5) is ineligible for public assistance; and (6) there are other "compelling circumstances" weighing heavily in favor of interim relief. *See Williams v. State Univ. of N.Y.*, 635 F.Supp. 1243, 1248 (E.D.N.Y.1986). "In essence, the plaintiff must quite literally find [himself] being forced into the streets

or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm." *Id.* at 1248.

*Shady v. Tyson,* 5 F.Supp.2d at 109.

Applying these standards to this case, the Court finds that the plaintiff has not established such extraordinary circumstances warranting a TRO. Dr. Ahmad is not precluded from seeking other employment, and continuing his research and teaching elsewhere, once his termination comes to pass. In addition, he does not allege that his unemployment would put a financial strain on his family resources, that he is on the verge of bankruptcy or that he is "being forced out into the street." Significantly, he is a professional who holds a doctorate and who evidently specializes in the sophisticated field of stroke research and treatment. With reasonable certainty, he will continue to practice his learned profession. While the Court does not dispute the plaintiff's suggestion that his loss of employment will occasion some loss of reputation and interruption in his research and work, this does not amount to "irreparable harm." In reaching this conclusion, the Court notes the Second Circuit's admonishment that preliminary injunctions are "extraordinary remedies" that "should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d at 80.

The Court also observes that this lawsuit ultimately amounts to a claim for monetary damages based on employment discrimination. If the plaintiff prevails in this case on the merits, he may be awarded his back pay, front pay, the value of any lost benefits or earnings and, perhaps reinstatement. He thus has failed to demonstrate that his alleged "injury is not capable of being fully remedied by money damages." *NAACP v. Town of East Haven,* 70 F.3d at 224.

The plaintiff's motion also is undermined by his considerable delay in making it: the University notified Dr. Ahmad of his termination in May of 1997, yet he waited nearly 15 months before requesting a TRO and preliminary injunction. As this Court discussed in *Shady v. Tyson*:

"The Second Circuit has observed that '[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action .... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.' ... The Second Circuit [has] further held that '[l]ack of diligence, standing alone, may ... 'preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm ....'" *Costello v. McEnery,* 767 F.Supp. 72, 78 [S.D.N.Y.1991] )(citing *Borey v. National Union Fire Insurance Company of Pittsburgh,* 934 F.2d 30, 33–34 [2d Cir.1991]; *Majorica, S.A. v. R.H. Macy & Co., Inc.,* 762 F.2d 7, 8 [2d Cir. 1985] ).... "This delay in seeking relief bolsters the Court's conclusion that there has been an insufficient showing of irreparable harm to justify issuance of a preliminary injunction." *Costello,* 767 F.Supp. at 75.

*Shady v. Tyson,* 5 F.Supp.2d at 108.

Accordingly, the Court concludes that Dr. Ahmad has failed to establish the requisite "extraordinary circumstances" based on harm to reputation and ability to practice his profession, required to award the "drastic" remedy of a TRO.

### 2. Likelihood of Success

The second step of the inquiry requires that the movant demonstrate a likelihood of success on the merits. Before engaging in this analysis, the Court would ordinarily be required to determine whether the plaintiff is required to make an ordinary showing of likelihood of success. However, the Court need not undertake such an analysis. As stated above, the plaintiff clearly is unable to establish irreparable harm. Accordingly, he is not entitled to equitable relief no matter how likely his chances of success on the merits and his motion for a TRO is denied. The plaintiff's motion for a preliminary injunction is hereby denied, without prejudice and with leave to renew, should the plaintiff

so desire, upon contacting the Court's chambers to establish a briefing schedule.

## III. CONCLUSION

After reviewing the parties' submissions, and hearing oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiff's motion for a temporary restraining order is denied; and it is further

**ORDERED,** that the plaintiff's motion for a preliminary injunction is denied, without prejudice and with leave to renew, should the plaintiff so desire, upon contacting the Court's chambers to establish a briefing schedule.

**SO ORDERED.**