**Richard C. WALLIKAS and Raymond D. Schaffer, Plaintiffs,**

v.

**David HARDER, Broome County Sheriff, in his individual and official capacities; County of Broome; and Gerald W. Kellar, Broome County Undersheriff, in his individual and official capacities; Defendants.**

**No. 99–CV–1212 (TJM).**

United States District Court,
N.D. New York.

Dec. 13, 1999.

Marya C. Young, Law Offices of Ronald Benjamin, Binghamton, NY, for Plaintiffs.

Robert G. Behnke, Of Counsel, Broome County Attorney's Office, Edwin L. Crawford County, Binghamton, NY, for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. Background

Plaintiffs Richard Wallikas ("Wallikas") and Raymond Schaffer ("Schaffer") (collectively "Plaintiffs") commenced the instant litigation against Defendants David Harder ("Harder"), Broome County Sheriff, in his individual and official capacities, the County of Broome (the "County"), and Gerald W. Kellar ("Kellar"), Broome County Undersheriff, in his individual and official capacities (collectively "Defendants"), asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' constitutional rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiffs also assert pendant state law claims under the New York Constitution and N.Y. CIV. SERV.

LAW § 75–b. The crux of the present dispute is Plaintiffs' allegation that Defendants retaliated against them, by affecting the terms and conditions of their employment, in connection with Plaintiffs' participation in the recent election for the Broome County Sheriff's position. Specifically, Plaintiffs contend that they have been retaliated against "for their participation in the elective process, as well as [for] their speech on matters of public concern and their exposure of wrongdoing within the [Sheriff's] [D]epartment during the time before [Sheriff Harder] was elected." Pls. Mem. of Law at 1. Although Plaintiffs have not lost their jobs or salaries, Plaintiffs allege that they have been "subjected to actual and constructive demotions, discipline and harassment in their ongoing employment." *Id.* at 3. Plaintiff Wallikas, who apparently opposed Harder in the election for Broome County Sheriff, contends that Harder's actions have placed him "into a zone of idleness, which is compounded by [his] day-to-day humiliation of being observed by long-time colleagues in ... demeaning position[s]." *Id.* Plaintiff Schaffer, who apparently supported Wallikas' candidacy for Sheriff and opposed certain political contributions to Harder, claims similar retaliatory actions by Defendants.[1] *See id.* at 3–4.

The election for Broome County Sheriff, which was the starting point for the alleged retaliatory campaign that is the basis of Plaintiffs' Complaint, occurred in November 1998. Plaintiffs commenced this action on August 5, 1999, some nine months later, by filing a Verified Complaint seeking: (1) compensatory and punitive damages; (2) restoration to the positions and job responsibilities Plaintiffs held prior to the events alleged in the Complaint; and (3) removal of any admonitions or adverse reports contained in Plaintiffs' personnel files. On September 10, 1999, some one month later, Plaintiffs moved, by Order to Show Cause, for a temporary restraining order ("TRO") and a preliminary injunction. On September 13, 1999, this Court denied Plaintiffs' motion, and later clarified that such denial was based on the Court's determination that the present matter need not be heard on an expedited basis. *See* Docket Nos. 7 and 14. Plaintiffs' appeal of that decision was subsequently dismissed. *See* Docket No. 29.

On October 25, 1999, on motion of Defendants, this Court dismissed both the official-capacity claims against Defendants Harder and Kellar, and the state-based claims brought pursuant to the New York State Constitution and N.Y. CIV. SERV. LAW § 75–b. *See Wallikas v. Harder,* 67 F.Supp.2d 82, 83–86 (N.D.N.Y.1999). On November 4, 1999, approximately two months after this Court denied Plaintiffs' motion by Order to Show Cause seeking a TRO and preliminary injunction, Plaintiffs filed the instant preliminary injunction motion before the Court. Because the Court finds that the adjudication of Plaintiffs' motion can be made on the paper record presently before it, a hearing is not required. *See Charette v. Town of Oyster Bay,* 159 F.3d 749, 755 (2d Cir.1998); *Consolidated Gold Fields PLC v. Minorco,*

---

1. Schaffer, who was responsible for overseeing training programs at the Broome County Law Enforcement Academy, separately claims that Harder has criticized his training programs and given him negative written evaluations based on "prior disputes with ... three police chiefs over matters affecting the operation of the training academy according to state guidelines, and [his] views on ... whether political favoritism was being applied to assignments of officers." Affidavit of Raymond D. Schaffer, at ¶¶ 20, 23.

Schaffer also alleges that Defendant Harder ordered him "to cease using the rank of Lieutenant and changed [his] rank and title solely to Training Director...." Schaffer Aff. at ¶ 2. Harder contends, however, that Schaffer's rank and title were not changed in January 1999, *see* Affidavit of David Harder, at ¶ 2, and Defendants further allege that, "[w]hile the Training Director is paid at a rate equivalent to that of a lieutenant, they are listed as two separate positions in the collective bargaining agreement." *See* Affidavit of Max Raterman, at ¶ 8 (citing Employment Contract Between County of Broome and Broome County Sheriff's Law Enforcement Officers Association).

*S.A.*, 871 F.2d 252, 256 (2d Cir.1989) (" '[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.' ") (quoting *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790 (2d Cir.1968)). The Court, having carefully reviewed the detailed affidavits submitted by the parties, is familiar with "the substance of the testimony to be offered." *Redac Project 6426, Inc.*, 402 F.2d at 790–91. Moreover, because the Court finds that Plaintiffs have failed to establish the requisite irreparable harm for a preliminary injunction to issue, the Court need not reach the merits of Plaintiffs' claims and, thus, it is not necessary to hold a hearing to resolve any disputed issues of fact. *See id.* at 791. Accordingly, the Court expresses no view with respect to the merits of Plaintiffs' remaining claims.

## II. Discussion

 "[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990) (citing *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986)); *see also Ahmad v. Long Island Univ.*, 18 F.Supp.2d 245, 247 (E.D.N.Y.1998); *Costello v. McEnery*, 767 F.Supp. 72, 75 (S.D.N.Y.) (describing a preliminary injunction as a "drastic remedy"), *aff'd*, 948 F.2d 1278 (2d Cir.1991), *cert. denied*, 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). "A party seeking a preliminary injunction generally must establish '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Charette*, 159 F.3d at 754 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). "Irreparable harm is 'the single most important prerequisite for the issuance of a

preliminary injunction.' " *Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (quotation omitted)). To establish irreparable harm, " '[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.' " *Id.* at 234 (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir.1995)); *see also N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.1995); *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995) ("Irreparable harm 'means injury for which a monetary award cannot be adequate compensation.' ") (quoting *Jackson Dairy, Inc.*, 596 F.2d at 72). Although a movant's allegations that his First Amendment rights have been impaired can constitute irreparable harm, *see, e.g., Charette*, 159 F.3d at 755; *Time Warner Cable of N.Y.C. v. Bloomberg, L.P.*, 118 F.3d 917, 924 (2d Cir.1997); *Harford v. County of Broome*, 1999 WL 615190, at *2 (N.D.N.Y. July 15, 1999) (citing *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996)), " 'it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued....' " *Charette*, 159 F.3d at 755 (quoting *Time Warner Cable*, 118 F.3d at 924). The decision to grant or withhold a preliminary injunction rests in the sound discretion of the district court, "and its determination will not be disturbed on appeal unless the grant or denial of this relief is an abuse of discretion." *JSG Trading Corp.*, 917 F.2d at 79; *see also Charette*, 159 F.3d at 755.

██ To establish irreparable harm sufficient to entitle Plaintiffs to a preliminary injunction, Plaintiffs must demonstrate that monetary damages and reinstatement and/or restoration of previous responsibilities are not capable of redressing any injuries occasioned by Defendants' alleged wrongdoing. *See Jayaraj*, 66 F.3d at 39 ("The possibility that adequate compensa-

tory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)); *Borey v. National Union Fire Ins. Co. of Pittsburgh,* 934 F.2d 30, 34 (2d Cir.1991) ("[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted.") (citation omitted); *JSG Trading Corp.,* 917 F.2d at 79 (collecting cases); *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief."); *Harford,* 1999 WL 615190, at \*2–\*3.

■ In addition to monetary damages, Plaintiffs are seeking restoration to the positions and responsibilities they assumed before Sheriff Harder took office and removal of any adverse reports placed in their personnel files since that time. If they are successful in the underlying litigation, Plaintiffs can be made whole by being restored to their prior positions and responsibilities; having negative reports removed from their files; and obtaining monetary damages for any injuries resulting from Defendants' misconduct. Such relief would adequately compensate Plaintiffs "for any damages [they] may now be suffering as a result of [D]efendants' actions." *Harford,* 1999 WL 615190, at \*3 (citing *Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 276 (2d Cir.1996); *Petrella v. Siegel,* 843 F.2d 87, 89 (2d Cir.1988)); *see also Savage,* 850 F.2d at 68; *Ahmad,* 18 F.Supp.2d at 249 (citing *Town of East Haven,* 70 F.3d at 224). Thus, because Plaintiffs can be adequately compensated by monetary damages and other post-litigation relief, Plaintiffs have failed

to satisfy the irreparable harm prong for a preliminary injunction.

In arguing that Harder's actions constitute irreparable harm, Wallikas contends that he has:

> been literally put into a zone of idleness, which is compounded by the day-to-day humiliation of being observed by long-time colleagues in the demeaning position of not only returning to plain-clothes, but having no access to the normal accouterments of the position of Captain and no authority concomitant with that position. . . .

Pls. Mem. of Law at 3.

Schaffer alleges similar retaliatory acts by Harder that resulted in personal humiliation and a loss of reputation, focusing primarily on Harder's criticisms over Schaffer's work as Training Director and no longer being able to use the rank of lieutenant. *See* Schaffer Aff. at ¶ 2. Both Plaintiffs seek, as part of their motion for a preliminary injunction, to have negative reports and admonitions removed from their personnel files.

■ In the context of adverse employment action, adverse personnel reports, loss of reputation, reassignment of responsibilities, and personal humiliation are insufficient to constitute the "irreparable harm" necessary to obtain a preliminary injunction. *See Sampson v. Murray,* 415 U.S. 61, 89–91, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (holding that complaint alleging that Plaintiff "might be deprived of her income for an indefinite period of time, that spurious and unrebutted charges against her might remain on the record, and that she would suffer the embarrassment of being wrongfully discharged in the presence of her co-workers" did not constitute irreparable injury for purpose of injunctive relief); *Stewart v. United States Immigration and Naturalization Serv.,* 762 F.2d 193, 199–200 (2d Cir.1985); *Ahmad,* 18 F.Supp.2d at 248–49 (citing *Sampson,* 415 U.S. at 89, 94 S.Ct. 937); *Clarke v. The City of New York,* 1998 WL 564564,

at *5 (E.D.N.Y. July 1, 1998) (citing *Brown v. New York City Health & Hosps. Corp. Emergency Med. Serv.*, 1996 WL 68558, at *3 (E.D.N.Y. Feb.5, 1996) ("[H]umiliation and damage to an employee's reputation ... will rarely constitute sufficient grounds for irreparable injury to justify reinstatement.")); *Marano v. New York City Transit Auth.*, 1993 WL 17434, at *2 (E.D.N.Y. Jan.19, 1993); *Rao v. New York Health & Hosps. Corp.*, 1990 WL 201662, at *5 (S.D.N.Y. Dec.6, 1990), *aff'd*, 946 F.2d 883 (2d Cir.1991), *cert. denied*, 502 U.S. 1040, 112 S.Ct. 891, 116 L.Ed.2d 794 (1992); *Snead v. Burstein*, 635 F.Supp. 808, 812 (N.D.N.Y.1986). Moreover, Plaintiffs here have not alleged any facts or circumstances to justify a finding that the circumstances surrounding Plaintiffs' alleged demotions and reassignments "are so extraordinary and depart so far from the normal situation." *Brown*, 1996 WL 68558, at *3; *see also Sampson*, 415 U.S. at 92 n. 68, 94 S.Ct. 937. Because restoration of previous responsibilities and/or reassignment, removal of adverse reports and admonitions issued since Harder took office, and money damages can make Plaintiffs whole for any reputation loss and humiliation suffered during the pendency of the litigation, Plaintiffs' injuries are "plainly reparable," *Savage*, 850 F.2d at 68, and, thus, insufficient to warrant injunctive relief.[2]

Notably, the retaliatory acts of which Plaintiffs complain stem from Plaintiffs' opposition to Harder's candidacy for Sheriff and opposition to certain contributions to Harder's campaign. *See* Pls. Mem. of Law at 1–3. Any alleged "chill" to Plaintiffs' First Amendment rights occurred during the November 1998 election. Indeed, Plaintiffs do not contend that their

First Amendment rights are currently being "chilled," or will likely be "chilled" in the near future; rather, they generally allege that Harder's actions stem from Plaintiffs' vocal opposition to Harder in the past election, which will have a "chilling effect on the rights of public officials," *see* Pls. Mem. of Law at 3, given Harder's position as the chief law enforcement officer of Broome County. *See, e.g., American Postal Workers Union v. United States Postal Serv.*, 766 F.2d 715, 722 (2d Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986) ("[A]ppellees merely make the conclusory assertion that Danko's discharge has 'chilled the will of the postal workers in Connecticut, and their elected officials.'"). Plaintiffs, however, have not produced any evidence that other employees of the Sheriff's Department have had their speech "chilled" as a result of Harder's actions. Moreover, as the Second Circuit stated in *American Postal Workers Union:*

> [W]e fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

766 F.2d at 722; *see also Savage*, 850 F.2d at 68; *Costello*, 767 F.Supp. at 77.

Accordingly, the Court is not convinced that a preliminary injunction would serve to thaw any alleged "chill."

Furthermore, Plaintiffs' considerable delay in initiating the instant action and seeking injunctive relief further weighs

---

2. Plaintiffs attempt to distinguish this case from the Court's decision in *Harford* is unpersuasive. *See* Pls. Mem. of Law at 3. Here, as in *Harford,* Plaintiffs seek to enjoin adverse employment action taken against them. *See Harford,* 1999 WL 615190, at *2–*3 (seeking reinstatement and injunction barring further disciplinary measures). Indeed, in both cases, the plaintiffs seek reinstatement and/or reassignment and monetary damages. The Court notes, however, that the harm alleged by Wallikas and Schaffer—reputation loss and humiliation resulting from reduced responsibilities and negative performance reports—is arguably less severe than the situation where an employee is terminated and actually deprived of a salary.

against a finding of irreparable harm. As the Second Circuit noted in *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985):

> Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.

Thus, a plaintiff's delay in commencing a lawsuit seeking protection of his constitutional rights tends to negate a finding of immediate and irreparable harm necessary for the issuance of a preliminary injunction. *See, e.g., Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995) (denying preliminary injunction where plaintiff waited nine months to initiate lawsuit and four more months before moving for a preliminary injunction) (citing *Citibank, N.A.*, 756 F.2d at 276); *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir.1985) (per curiam) ("Lack of diligence, standing alone, may ... preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice."); *Costello*, 767 F.Supp. at 78 (collecting cases); *Railroad P.B.A. of the State of New York, Inc. v. Metro-North Commuter R.R.*, 699 F.Supp. 40, 43 (S.D.N.Y.1988) ("[P]laintiff's delay in commencing this lawsuit suggests its own doubts as to the severity of harm at hand.").

As noted earlier, Plaintiffs' Complaint alleges numerous retaliatory acts by Defendant Harder *immediately after* he assumed his position as Sheriff of Broome County on January 1, 1999, following Harder's election to that position in November 1998. Indeed, many of the retaliatory acts of which Plaintiffs complain began as early as January 1999 and continued throughout the months that followed. *See* Pls. Mem. of Law at 1 ("The retaliation has continued consistently since the day the defendant Sheriff took office...."); Affidavit of Richard Wallikas, at ¶¶ 4–6; Affidavit of Raymond Schaffer ("Schaffer Aff."), at ¶¶ 19–27. Notably, Schaffer acknowledges that shortly after Harder won the election on November 3, 1998 (and before Harder actually took office), Harder "made it unequivocally clear that retaliatory measures would be taken against Wallikas and others who supported Wallikas' bid for Sheriff...." Schaffer Aff. at ¶ 13. Thus, although Plaintiffs first became aware of Harder's allegedly retaliatory actions immediately after the November 1998 election, Plaintiffs did not commence the instant action until August 1999, some seven months after Sheriff Harder officially took office, and nine months after the election. Moreover, Plaintiffs filed the instant preliminary injunction motion in November 1999, almost two months after the Court denied Plaintiffs' motion by Order to Show Cause seeking a TRO and preliminary injunction based on the same allegations and events. In total, Plaintiffs bring the instant motion for a preliminary injunction ten months after defendant Harder allegedly began retaliating against Plaintiffs in his capacity as Sheriff, and one year after Plaintiffs first became aware of Harder's alleged "unequivocal" intention to retaliate against Plaintiffs for their roles in the November 1998 election for Broome County Sheriff. Significantly, Plaintiffs do not allege that their delay was attributable to Defendants' actions or a need to further investigate the retaliatory acts alleged in the Complaint. *See, e.g., Tough Traveler, Ltd.*, 60 F.3d at 968. Under these circumstances, Plaintiffs' inaction demonstrates their lack of diligence in "press[ing] for a speedy adjudication of the merits of [their] claims." *Charette*, 159 F.3d at 757. Accordingly, Plaintiffs' considerable delay in bringing this action

and making the instant motion, coupled with the fact that Plaintiffs can be adequately compensated by an award of monetary damages, removal of adverse personnel reports placed in their files after Harder took office, and restoration to the positions and responsibilities they held prior to the election if Plaintiffs prevail on their claims, weighs against a finding of irreparable harm. *See id.; Harford,* 1999 WL 615190, at *2–*3; *Costello,* 767 F.Supp. at 76–78; *Railroad P.B.A. of the State of New York, Inc.,* 699 F.Supp. at 43.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for a Preliminary Injunction is **DENIED.**

**IT IS SO ORDERED.**